IN RE the MARRIAGE OF:
Deborah J. EMERY, Petitioner-Respondent-Petitioner,

v.

Jeffery J. EMERY, Appellant.

Supreme Court

*No. 84–038. Argued April 29, 1985.—Decided June 28, 1985.*

(Also reported in 369 N.W.2d 728.)

For the petitioner there were briefs by *Russell J. Janowiak* and *Dubin, Balistreri & Fuchs, Ltd.*, Milwaukee, and oral argument by *Mr. Janowiak.*

For the appellant there was a brief by *Charles D. Clausen* and *Friebert, Finerty & St. John, S.C.*, Milwaukee, and oral argument by *Mr. Clausen.*

DAY, J.   This is a review of an unpublished decision of the court of appeals reversing an order of the circuit court for Milwaukee county, Honorable Leander J. Foley, Jr. circuit judge.  The circuit court order denied the motion of Jeffery J. Emery, the defendant to vacate a divorce judgment granted to Deborah J. Emery on the grounds of lack of personal jurisdiction over the defendant.

Whether or not the circuit court erred in refusing to vacate the judgment of divorce for lack of personal jurisdiction depends on the answer to two questions:

> (1)  Did Deborah Emery exercise reasonable diligence to try and personally serve Jeffery Emery with a summons as required by sec. 801.11(1)(c), Stats. 1981–1982?[1]

---

[1] "**801.11 Personal jurisdiction, manner of serving summons for.**  A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:

"(1) NATURAL PERSON.  Except as provided in sub. (2) upon a natural person: . . .

"(c) If with reasonable diligence the defendant cannot be served under par. (a) or (b), service may be made by publication of the summons as a class 3 notice, under ch. 985, and by mailing.  If the defendant's post-office address is known or can with reasonable diligence be ascertained, there shall be mailed to the defendant, at or immediately prior to the first publication, a copy of the summons and a copy of the complaint.  The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence."

(2) Did Ms. Emery's substituted service by publication comply with sec. 801.11(1)(c), Stats. and sec. 985.02(1), Stats. 1981-1982?[2]

We conclude that Ms. Emery did exercise reasonable diligence in her attempt to personally serve Mr. Emery and that Ms. Emery did comply with sec. 801.11(1)(c), Stats. and sec. 985.02(1), when she instituted substituted service by publication. The circuit court did not err in refusing to vacate the divorce judgment granted to Ms. Emery. We, therefore, reverse the decision of the court of appeals and reinstate the order of the circuit court denying Mr. Emery's motion.

Deborah J. Emery and Jeffery J. Emery were married on September 12, 1978, in Milwaukee, Wisconsin. They had one child, a son, born October 19, 1979. The Emerys lived together as husband and wife until approximately July 5, 1982, at which time they separated. At the time they separated, the Emerys resided in Milwaukee.

On December 1, 1982, Ms. Emery, representing herself, filed a divorce action in Milwaukee county. On the summons she listed her husband's address as the Milwaukee address of her parents where she and their son were residing. The Milwaukee County Sheriff, pursuant to instructions by Ms. Emery, attempted service at that address. That attempt was unsuccessful and a "not found" certificate was filed with the clerk of courts on December 15, 1982. Ms. Emery testified that she retained a copy of the petition and summons so she might serve Mr. Emery if he came to the house to see their son.

On December 20, 1982, Ms. Emery commenced publication of a forty-day divorce summons in *The Daily Re-*

[2] "985.02 **Method of notification.** (1) Except as otherwise provided by law, a legal notice shall be published in a newspaper likely to give notice in the area or to the person affected. Whenever the law requires publication in a newspaper published in a designated municipality or area and no newspaper is published therein publication shall be made in a newspaper likely to give notice."

*porter* in Milwaukee county, purportedly in compliance with sec. 801.11, Stats. and ch. 985. The divorce proceeded by publication with no mailing. Mr. Emery was personally served with an order of appearance in Minnesota on April 5, 1983. A judgment of divorce was granted on April 29, 1983, by Judge George A. Burns.

Mr. Emery filed a motion to vacate the divorce judgment which was served upon Ms. Emery on November 23, 1983. On December 8, 1983, an evidentiary hearing was held before Judge Leander J. Foley, at which time the circuit court denied Mr. Emery's motion to vacate the divorce judgment. The court of appeals, in its decision of August 23, 1984, reversed the order of the circuit court and ordered that the judgment be vacated. This court accepted this review to determine if the circuit court erred in refusing to vacate the divorce judgment as void for want of personal jurisdiction.

Counsel for Mr. Emery moved for relief from the judgment of divorce under sec. 806.07(1)(d), Stats. 1981–1982,[3] upon the contention that the judgment was void for want of personal jurisdiction. Counsel asserts that Ms. Emery did not comply with the provisions of sec. 801.11, Stats. and ch. 985, and, therefore, the court which entered the divorce judgment by default did not obtain personal jurisdiction over Mr. Emery.

After the Emerys separated in July of 1982, Ms. Emery took their son and went to live at her parents' home on Florist Avenue in Milwaukee. Mr. Emery arrived in New Brighton, Minnesota, sometime between August 15, 1982, and August 20, 1982. There Mr. Emery stayed with his half-sister.

Ms. Emery testified, at the hearing on the motion to vacate the judgment, that she did not know her husband's whereabouts until sometime after the third week

[3] "806.07 **Relief from judgment or order.** (1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment; order or stipulation for the following reasons: . . . (d) The judgment is void."

of August. On approximately August 21, 1982, Mr. Emery and his half-sister had taken up residence with their father in Vidor, Texas. Ms. Emery testified that she had telephone conversations with her husband, whom she knew was at his father's house in Texas, in September of 1982. Ms. Emery testified that she informed her husband of her intention to file for divorce and that he replied that she should go ahead with it.

According to Ms. Emery, these conversations with her husband in Texas continued until sometime in November of 1982. She testified that Mr. Emery told her that he was leaving Texas and that he would be returning to Milwaukee around December 2, 1982. Mr. Emery testified that he told his wife that he was returning to Minnesota.

Ms. Emery testified that she had no knowledge of her husband's whereabouts in December of 1982, the month she filed for divorce, or in January of 1983. According to Ms. Emery, soon after she filed for divorce, she received a telephone call from Mr. Emery who informed her that he was no longer in Texas. She testified that she attempted to locate Mr. Emery by calling his half-sister in Minnesota. This attempt failed because the half-sister, according to Ms. Emery, refused to divulge Mr. Emery's address. Ms. Emery testified that she did contact her husband by means of a telephone number given by the half-sister. She testified that she informed her husband of the pending divorce but did not obtain an address to match the telephone number.

According to Ms. Emery, later telephone conversations between her and her husband were accomplished by means of a message and call-back system. Ms. Emery testified that she would call Mr. Emery's half-sister and leave a message and he would sometimes return the call. Ms. Emery testified that she attempted to ascertain her husband's whereabouts, but he refused to tell her where he was.

On December 8, 1982, the Milwaukee Police Department contacted Ms. Emery concerning her husband's possible involvement in a crime.

To Ms. Emery's knowledge, Mr. Emery had not appeared in Milwaukee at the time she published the summons in *The Daily Reporter* in Milwaukee county on December 20, 1982.

Mr. Emery testified that he remained in Vidor, Texas, until sometime between December 15 and December 20, 1982. He then returned with his half-sister to New Brighton, Minnesota. He testified that he arrived in Minnesota sometime between December 18 and December 21, 1982. He testified that he gave Ms. Emery the telephone number where he could be reached and that she never informed him that a divorce was pending.

According to Mr. Emery, he left New Brighton, Minnesota, and moved to Fridley, Minnesota, in March of 1983. He testified that he continued to have telephone communication with his wife but she did not tell him that a divorce was pending. He claimed that he was not informed of the divorce proceeding until he was served with an order of appearance on April 5, 1983, by the sheriff in Minnesota following his involvement in an automobile accident. According to Mr. Emery, he called his wife, after being served with the order, to have the court date changed because of a conflicting court date in Minnesota. The court date was not changed.

Mr. Emery's counsel raises two basic objections to the decision of the circuit court. First, counsel asserts that Ms. Emery did not exercise reasonable diligence in her attempt to effect personal service upon Mr. Emery. Second, counsel asserts that Ms. Emery did not comply with the provisions of sec. 801.11(1)(c), Stats. and ch. 985, in her attempt at substituted service by publication.

(1) *Reasonable Diligence To Effect Personal Service.*
Section 801.11(1), Stats. 1981-1982 provides in pertinent part:

"**801.11 Personal jurisdiction, manner of serving summons for.** A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:

"(1) NATURAL PERSON. Except as provided in sub. (2) upon a natural person:

"(a) By personally serving the summons upon the defendant either within or without this state.

"(b) If with reasonable diligence the defendant cannot be served under par. (a), then by leaving a copy of the summons at the defendant's usual place of abode within this state in the presence of some competent member of the family at least 14 years of age, who shall be informed of the contents thereof.

"(c) If with reasonable diligence the defendant cannot be served under par. (a) or (b), service may be made by publication of the summons as a class 3 notice, under ch. 985, and by mailing. If the defendant's post-office address is known or can with reasonable diligence be ascertained, there shall be mailed to the defendant, at or immediately prior to the first publication, a copy of the summons and a copy of the complaint. The mailing may be omitted if the post-office address cannot be ascerind with reasonable diligence."

In the instant case, Mr. Emery's counsel contends that Ms. Emery failed to comply with the provisions of sec. 801.11(1), Stats., because she did not meet the prerequisites of proceeding with a divorce by publication without mailing under sec. 801.11(1)(c). Counsel asserts that she did not exercise reasonable diligence in her attempt to effect service on Mr. Emery under either sec. 801.11 (1)(a) or (b). The circuit court disagreed.

Mr. Emery's counsel claims that the circuit court erred both as to the law and in its application of the law to the facts. The first error of law which counsel asserts is that

the circuit court placed too great an amount of significance upon the distinction between *in rem* and *in personam* proceedings. We disagree.

The circuit court said:

"THE COURT: The section that is relevant is the jurisdiction statute.

"While there may be some question, I think the Court did talk in its judgment of in personam judgment. I don't think there ever was in personam judgment. The issue here really is whether there is an in rem judgment. In personam is not necessary for the issues in this case. We really are dealing whether this Court, Judge Burns the presiding judge, had jurisdiction of the status of these parties, and that deals with the qualification as to whether this Court had in rem, the question whether the status was before the judge who granted this divorce.

"To gain in rem jurisdiction the Court, the party must follow the statutory dictates found in Section 801.11(c) [sic] of the statutes, am I correct, counsel?

"MS. LEVINE [Counsel for Mr. Emery]: Well, initially the party who is commencing the action must follow the dictates of 801.11(1)(a), and only if unsuccessful there—

"THE COURT: That's correct, 801.11, that's what, (c)? She attempted to do it under (c). So you have to start out with reasonable diligence the defendant cannot be served with (a) and (b)."

It is apparent that the court was making the same distinctions made by the statutes. Section 801.07(5), Stats. 1981–1982 provides:

"**801.07. Jurisdiction in rem or quasi in rem, grounds for generally.** . . . (5) When the action is an action affecting the family under s. 767.02(1)(a) to (d) and when the residence requirements of s. 767.05(lm) have been met, a court having subject matter jurisdiction may exercise jurisdiction quasi in rem to determine questions of status if the respondent has been served under s. 801.11 (1)."

Section 767.02(1)(c), Stats. provides:

"767.02 **Actions affecting the family.** (1) Actions affecting the family are: . . . (c) Divorce."

Section 801.07(5), Stats. requires service in compliance with sec. 801.11(1). Therefore, the issue of compliance with sec. 801.11(1)(c), remains the same regardless of whether the action is labeled *quasi in rem* or *in personam*.

Counsel for Mr. Emery next contends that the circuit court erred as a matter of law by placing the burden of proof upon Mr. Emery at the hearing on the motion to vacate the divorce judgment. We disagree.

In *West v. West,* 82 Wis. 2d 158, 262 N.W.2d 87 (1978), this court reviewed an order of the trial court which vacated a judgment of divorce on the grounds that jurisdiction was not obtained by publication because evidence adduced at the hearing on the motion to vacate showed that reasonable diligence was not exercised in an attempt to effect personal service. In affirming the order of the trial court, this court said:

"The question to be decided on the motion to vacate and to hold the judgment void is simply whether there was credible evidence to show that due diligence was not exercised. It is clear that the judge concluded that the evidence presented to him by the sworn testimony of Nettie Lee West and the sworn affidavit of Jamie Lee West's niece, Helen West Gildersleeve, was credible. On review, the test is that usually applied where findings of fact are made by a trial judge. Are the findings of fact contrary to the great weight and clear preponderance of the credible evidence? The trial judge was the sole determiner of the credibility of the witnesses, and it is apparent that the weight of the evidence was not contrary to his findings." *West,* 82 Wis. 2d at 165.

The circuit court in the instant case properly placed the burden upon Mr. Emery, who sought to vacate the judgment, to produce credible evidence to show that Ms. Emery did not exercise reasonable diligence in her attempt to personally serve him.

The case relied upon by Mr. Emery's counsel, *Danielson v. Brody Seating Co.*, 71 Wis. 2d 424, 238 N.W.2d 531 (1976), is distinguishable in that it involved a motion to dismiss a complaint for want of personal jurisdiction. In the instant case we are dealing with a motion to vacate a judgment and the standard described in *West* applies.

Counsel for Mr. Emery next asserts that the circuit court erred in applying the law to the facts. Counsel contends that Ms. Emery failed to make reasonably diligent efforts to personally serve Mr. Emery prior to the substituted service by publication. The court of appeals agreed.

The circuit court concluded that Mr. Emery failed to meet his burden of showing that Ms. Emery did not exercise reasonable diligence in her attempts at personal service. In so doing, the court made several findings of fact. The court found that although Ms. Emery knew her husband was in Vidor, Texas, at one time, Mr. Emery informed her in November of 1982, that he was leaving Texas. The circuit court found that Ms. Emery did not know her husband was in Texas when she was to attempt personal service. The court also found that Mr. Emery told his wife that he was returning to Wisconsin to see their son.

While Mr. Emery testified that he returned to Minnesota after leaving Texas, the court concluded that he did not give Ms. Emery his address. The court found that Ms. Emery contacted him through his half-sister. The court also found that Mr. Emery failed to establish that Ms. Emery could have obtained his address from his relatives. The court found that these people had a motivation not to give Ms. Emery the address. That motivation was apparently Mr. Emery's desire to avoid both civil and criminal proceedings.

These findings are clearly not against the great weight and clear preponderance of the evidence. They are sup-

ported by the sworn testimony of Ms. Emery. The court apparently found that the testimony of Mr. Emery lacked credibility, which seems wholly justified in light of his self-proclaimed desire to have the marriage set aside to prevent Ms. Emery from testifying against him in his murder trial in Texas.

We conclude that the circuit court did not err in concluding, upon the findings of fact, that Ms. Emery did exercise reasonable diligence in her attempt to personally serve Mr. Emery prior to instituting substituted service by publication. In view of Mr. Emery's admitted frequent and extensive travel following his separation from his wife, Ms. Emery was entitled to rely upon his statement of November, 1982, that he was leaving Texas. When this is combined with the fact that Ms. Emery did not know her husband was in Texas at the time she was to attempt personal service, it is clear that she was not required to attempt service there.

Ms. Emery was also not required to attempt to serve Mr. Emery in Minnesota in view of the following circumstances. Mr. Emery told his wife he was returning to Wisconsin. By his own admission he may not have arrived in Minnesota until December 21, 1982, after the publication of the summons. Once in Minnesota, he would not reveal his address to Ms. Emery.

Since Mr. Emery told his wife that he was returning to Wisconsin to see their son, it was reasonable for Ms. Emery to attempt service at her parents' home where he knew she and the child were staying.

This court's decision in *West,* upon which Mr. Emery's counsel relies, is distinguishable on the facts. In *West,* Mrs. West, upon whom service was sought, had lived in Alabama for many years. In the year the divorce action was brought by Mr. West, Mrs. West moved to Mississippi to take a job there. *West,* 82 Wis. 2d at 163. Mr.

West only attempted service in Alabama at the last known address of Mrs. West. He made no inquiries of his or her relatives that lived near and knew his wife. *West,* 82 Wis. 2d at 161, 165, 167.

In the instant case, unlike *West,* Mr. Emery himself informed his wife that he was returning to Wisconsin. This is especially important in view of the fact that he was frequently on the move with no permanent place of residence established after leaving Milwaukee.

(2) *Substituted Service by Publication.*

Finally, Mr. Emery's counsel contends that the circuit court erred in finding that Ms. Emery published the summons in accordance with sec. 801.11(1)(c), Stats. and sec. 985.02(1), Stats. 1981–1982.

Section 801.11(1)(c), Stats. provides in pertinent part:

"801.11 **Personal jurisdiction, manner of serving summons for.** A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:
"(1) NATURAL PERSON. Except as provided in sub. (2) upon a natural person: . . . (c) If with reasonable diligence the defendant cannot be served under par. (a) or (b), service may be made by publication of the summons as a class 3 notice, under ch. 985, and by mailing . . . The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence."

Section 985.02(1), Stats. provides:

"985.02 **Method of notification.** (1) Except as otherwise provided by law, a legal notice shall be published in a newspaper likely to give notice in the area or to the person affected. Whenever the law requires publication in a newspaper published in a designated municipality or area and no newspaper is published therein publication shall be made in a newspaper likely to give notice."

The circuit court concluded that Ms. Emery did comply with Wisconsin law when she published the forty-day summons in *The Daily Reporter*, a Milwaukee county publication. The circuit court focused upon Mr. Emery's admission that he was moving extensively around the country, the fact that his contacts, his wife and child, were in Wisconsin and that Mr. Emery told his wife he was coming back to Wisconsin to see the child.

In view of these facts and the fact that Ms. Emery did not know her husband remained in Texas after he said he was leaving Texas, we conclude that the circuit court did not err. Considering Mr. Emery's constant movement, it was reasonable for Ms. Emery to rely upon his statement that he was returning to Wisconsin to see their son.

It was not necessary for Ms. Emery to mail a copy of the summons because she could not, with reasonable diligence, ascertain Mr. Emery's post-office address.

The circuit court did not err in denying Mr. Emery's motion to vacate the judgment of divorce. Ms. Emery did comply with Wisconsin's jurisdictional statutes and Mr. Emery was not deprived of his rights under Wisconsin law or of his right to due process under the fourteenth amendment.[4]

*By the Court.*—The decision of the court of appeals is reversed and the order of the circuit court denying the motion to vacate the judgment is reinstated.

---

[4] United States Constitution, Amendment XIV, sec. 1:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

SHIRLEY S. ABRAHAMSON, J. (dissenting). If I were a lawyer practicing in this state or a circuit or court of appeals judge, I would not rely on this case as a guidepost for determining what is reasonable diligence to effect personal service. We should have never accepted review of this case. It does not fit within our criteria. The case involves the application of settled law to an unsettling case.

This case is better understood if the reader is aware of the following information in the court file:

"Jeffery Emery is facing a murder charge in the State of Texas punishable by death. Deborah Emery is the State's key witness against Jeffery Emery with regard to the pending murder charge. If the Judgment of Divorce is declared void, then, pursuant to an exclusionary rule of evidence under Texas law Deborah Emery could not testify. Society as a whole would be jeopardized if the State of Texas is not allowed to present its best evidence, the testimony of Deborah Emery, against Jeffery Emery." Deborah Emery's petition to this court to review the decision of the court of appeals, p. 6.