Jeff EMERY, Appellant,

v.

The STATE of Texas, Appellee.

No. 71358.

Court of Criminal Appeals of Texas.

May 11, 1994.

Rehearing Denied June 22, 1994.

John F. Quinn, Bryan, Margaret A. Polansky, Caldwell, for appellant.

Bill Turner, Dist. Atty., and Deena J. McConnell, Asst. Dist. Atty., Bryan, Robert Huttash, State's Atty., Austin, for State.

## OPINION

MALONEY, Judge.

Appellant was convicted of capital murder committed in the course of a burglary. The jury answered the special issues submitted to it in the affirmative and the trial court as-sessed punishment at death. Appeal to this court is automatic. TEX.CODE CRIM.PROC. ANN. art. 37.071(h). We will affirm.

Appellant claims the evidence presented at trial was insufficient to support his conviction and to support the jury's affirmative answer to special issue number two. For purposes of resolving these issues we briefly discuss the facts in a light most favorable to the verdict.

The evidence showed that on the night of October 12, 1979, the deceased felt ill at work and returned early to the apartment she shared with a roommate. Once home, she undressed and went into her roommate's room to return a dress she had borrowed. Appellant was hiding in the roommate's closet, having previously unlawfully entered the empty apartment with a pass key. Appellant attacked the deceased from behind, stabbing her four times in the back. The deceased turned and appellant knocked her to the floor and continued stabbing her until she was dead. Appellant then had sexual intercourse with the deceased's body. Appellant wiped clean any fingerprints he might have left in the apartment and on the front door before fleeing the scene.

At home appellant showered and disposed of his blood-stained clothes and knife. Curiously, appellant then forced his wife, Deborah Emery, to accompany him back to the scene of the crime to watch the police investigation. Appellant confessed to his wife that night that he had committed the murder and subsequently confessed to two other people.

The police investigation revealed no sign of a forced entry or of anything missing from the apartment. The deceased was stabbed twenty-five times, resulting in her death.

In his third point of error appellant claims the evidence is insufficient to establish that the murder was committed in the course of a burglary. Based upon the lack of evidence showing a forced entry and his contention that only the residents and apartment management staff had a key to the apartment, appellant maintains that the entry was consensual, thereby precluding a finding of a burglary. The State points to appellant's three extrajudicial confessions and to evi-

dence that the deceased was surprised by the attack as being sufficient to support a finding that the offense was committed in the course of a burglary.

█ We review sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict and asking whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Dunn v. State*, 819 S.W.2d 510, 513 (Tex.Crim.App.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 105, 121 L.Ed.2d 63 (1992). An extrajudicial confession is not alone sufficient to support a conviction; there must be independent evidence of the *corpus delicti*.[1] In the capital murder context, an extrajudicial confession must be corroborated as to the murder and the underlying felony which elevated the murder to a capital offense. *Gribble v. State*, 808 S.W.2d 65, 71 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991). In other words, the *corpus delicti* of both the murder and the underlying felony must be shown by evidence independent of the confession. We have explained:

> Because the essential purpose of the corroboration requirement is to assure that no person be convicted without some independent evidence showing that the very crime to which he confessed was actually committed, we agree that the *corpus delicti* of capital murder includes more than merely homicide by criminal agency. [footnote deleted] In the present context, [murder committed in the course of kidnapping,] we hold that *evidence independent of appellant's confession was required to show that his victim had been kidnapped.*

*Id.* (emphasis in original). The independent evidence need not connect the defendant to the crime; it need only show that a crime was committed. *Id.* In addition, such evidence need not be sufficient by itself to prove the offense; it need only be "some evidence which renders the *corpus delicti* more probable than it would be without the evidence". *Id.* at 71–72.

█ Appellant confessed to three people that he had stabbed a woman while trying to burglarize her apartment.[2] The State offered independent evidence of the corpus delicti of the murder by proving the identity of the body and that death was caused by stabbing. *See Dunn v. State*, 721 S.W.2d 325, 334 (Tex.Crim.App.1986) (corpus delicti of murder shown in proving the identity of deceased and that death resulted from criminal act). The State also offered independent evidence of the corpus delicti of burglary by showing that the deceased did not consent to the entry. The deceased's roommate testified that neither she nor the deceased were acquainted with appellant prior to the offense. An expert for the State testified that of the twenty-five stab wounds on the deceased's body, four shallow wounds appeared on her back, which the State points to as evidence that the deceased was surprised by her attacker from behind.[3] The State also offered evidence that appellant had access to the deceased's apartment. Appellant's wife and two of appellant's friends testified that appellant was a known pass key burglar. In addition, appellant's employer testified that the company had pass keys to the deceased's apartment complex which were kept in the service truck. Appellant rode to jobs in that truck and had access to the pass keys. We hold that this amounts to "some evidence" which renders the burglary "more probable than it would be without the evidence." *Id.*

---

1. We have described corpus delicti as meaning "harm brought about by the criminal conduct of some person." *Gribble v. State*, 808 S.W.2d 65, 70 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991).

2. Deborah Emery and Marie Michaeloff testified that appellant admitted to burglarizing a woman's apartment and then stabbing her. Jim Smith testified that appellant first told him that he burglarized a man's apartment with the use of a pass key and then killed the man. Smith further testified that appellant later admitted to him that the victim had been a woman.

3. The stab wounds on the deceased's back are corroborative of one of appellant's confessions in which he stated that he attacked the deceased initially from behind. The wounds on the deceased's back render the burglary "more probable than it would be without the evidence" of wounds on the deceased's back.

Appellant's confessions, together with the independent evidence discussed above supports the jury's finding that the murder was committed in the course of a burglary.[4]

Appellant also claims the evidence was insufficient to support the jury's finding that appellant was the offender. In support of this contention, appellant points to the lack of scientific evidence linking appellant to the crime scene. Appellant argues that the only evidence connecting appellant with the murder was his ex-wife's testimony. Appellant also points out that although he had previously repaired the air conditioner in the deceased's apartment, the deceased's father testified that she had not owned any valuable possession that would have motivated appellant to return. In fact, nothing was found missing from the apartment. Appellant further contends that witness Paula Bower's testimony that she saw a different person in the deceased's apartment the night of the murder evidences that someone other than appellant committed the murder. Finally, appellant argues that witness Alfred Nash did not identify appellant as the person he saw crawl out of the deceased's window on the night of the murder, even though he knew appellant.

An extrajudicial confession is sufficient to establish the identity of the perpetrator of a crime. *Gribble*, 808 S.W.2d at 70. Three extrajudicial confessions were admitted into evidence. Details of the offense, such as the length of the deceased's hair, the nude state of her body, the stab wound inflicted to her vagina after her death, and the state of the deceased's apartment are consistent with the witnesses' accounts of appellant's confessions. We hold the evidence is sufficient evidence to support the jury's finding that appellant committed the offense.[5] Appellant's third point of error is overruled.

In his ninth point of error, appellant claims the evidence is insufficient to support the jury's affirmative answer to special issue number two.[6] The standard for reviewing the sufficiency of the evidence to support the jury's answers to the special issues is whether the evidence presented at the guilt/innocence phase of the trial along with evidence presented at the punishment phase, when viewed in the light most favorable to the verdict, would lead any rational trier of fact to make the finding beyond a reasonable doubt. *Livingston v. State*, 739 S.W.2d 311, 340 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

In the instant case, appellant inflicted twenty-five stab wounds on the deceased and sexually assaulted and mutilated her body after her death. Apart from these facts, the State offered evidence of appellant's violent nature. Appellant had physically abused his wife through-out their approximately four year marriage; the State offered evidence that during their marriage appellant had beat his wife, kicked her, hit her with a lead

---

4. We note that in their briefs the parties have analyzed this point of error by utilizing the reasonable alternative hypothesis construct. This method of analyzing sufficiency of the evidence is still applied by reviewing courts in circumstantial evidence cases that were pending on direct review or not yet final at the time of our opinion in *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App. 1991). Although the trial of this case had begun when we issued our opinion in *Geesa*, the alternative hypothesis construct is not appropriate here because this is not a circumstantial evidence case.

A confession or admission by the defendant to the commission of the offense is direct evidence. *Ridyolph v. State*, 545 S.W.2d 784 (Tex.Crim. App.1977) (proof that defendant admitted or confessed to killing the deceased is direct not circumstantial evidence); *see also Hankins v. State*, 646 S.W.2d 191, 195 (Tex.Crim.App.1981) (proof that defendant confessed to burglary is direct, not circumstantial evidence). Appellant's three extrajudicial confessions to committing murder while attempting to burglarize the deceased's apartment amounted to direct evidence. Although appellant never told his confessors the name of his victim, he confessed to his wife on the night of the offense and made her accompany him to the deceased's apartment complex to watch the ongoing police investigation.

5. We need not address the evidence in light of appellant's proposed alternative hypothesis that someone other than appellant committed the murder. *See Fn. 3, supra.*

6. The second special issue asked the jury whether "there is a probability that the defendant, JEFF EMERY, would commit criminal acts of violence that would constitute a continuing threat to society."

pipe and a pool cue, rammed her head into a bath tub, pulled a knife on her, and dragged her by the hair. Appellant had also been abusive to his children, knocking his eldest son across the room when he tried to aid his mother and beating his infant son when he cried. There was also evidence that appellant had robbed two places of business at knife point, had killed three of his wife's cats, pinning a note to one of them when his wife was late, and had threatened his wife that if she reported his commission of the instant offense, he would kill her and her family.

Appellant argues that because he had lived a relatively nonviolent life for the last ten years and because he presented psychiatric testimony that he would not be a continuing threat to society, he raised a reasonable doubt as to the second special issue. The State points out that appellant had been in custody eight and one half of the last ten years.[7] He asserts that an absence of violence between the offense and trial does not render the evidence insufficient to support a jury's finding that a defendant would constitute a continuing threat to society. Further, the State argues that the jury was entitled to weigh the credibility of the witnesses, and was free to accept or reject the testimony of any witness, including psychiatric testimony.

Viewing the evidence in a light most favorable to the verdict, we hold, based upon the evidence of appellant's violent nature, his past acts of violence, and the facts of the instant offense, that a rational jury could find that appellant would constitute a continuing threat to society. *Richard v. State*, 842 S.W.2d 279 (Tex.Crim.App.1992); *Burns v. State*, 761 S.W.2d 353 (Tex.Crim.App.1988). Point of error nine is overruled.

In his first point of error appellant argues that his right to a speedy trial, guaranteed by the Sixth Amendment to the United States Constitution[8] was abrogated by the eight and one half year delay between his first indictment and the trial which resulted in the current conviction. For purposes of resolving this issue we set forth the procedural history of this case in some detail.

Appellant was arrested on April 28, 1983. Appellant's wife, who was expected to testify for the State, had previously filed for a divorce from appellant. The divorce was granted on April 29, 1983, but appellant contested it on appeal. Appellant's trial was postponed pending finality of the divorce.[9] The State opposed the delay and filed several announcements of ready.[10] Appellant did not object to the delay until after his divorce was final (in June of 1985), by filing, on March 26, 1986, a "Written Motion to Set Aside Indictment for Violation of Speedy Trial Act."

Appellant's motion was denied and appellant was convicted and sentenced to death on June 20, 1986. Appellant filed a motion for new trial which was denied on July 7, 1986. On July 16, 1986 appellant filed notice of appeal. Appellant's conviction was reversed and the cause remanded for a new trial on November 14, 1990.[11] *Emery v. State*, 800

---

7. *See* pp. 707–710 *infra,* pertaining to the eight and one year passage of time between the initial indictment and appellant's conviction in this case, as related to appellant's right to a speedy trial.

8. Appellant also claims his rights were violated under Article I § 10 of the Texas Constitution; however, because he presents no argument or authority as to why the Texas Constitution should afford him any more protection than the federal constitution, appellant has not preserved his state constitutional claim.

9. The divorce action was filed in Wisconsin. An intermediate court of appeals reversed, but the Supreme Court of Wisconsin ultimately affirmed the judgment of the trial court. *In re the Marriage of: Emery v. Emery*, 124 Wis.2d 613, 369 N.W.2d 728 (1985).

10. Under then article 38.11 of the Texas Code of Criminal Procedure, appellant's wife would not have been able to testify against appellant as long as they were married. Tex.Code Crim.Proc.Ann. art. 38.11 (1983) (now repealed in favor of Tex. R.Crim Evid. 504 effective September 1, 1986). However, it was the State's position that subsequent to the trial court's decree of divorce, appellant's wife could have testified at appellant's trial regardless of a pending appeal.

11. Following are excerpts from our opinion in that case describing events leading to the reversal of the conviction:

> Appellant made a motion for extension of time to file the transcription of the court reporter's notes; this Court granted the motion, and extended the time for filing, first to October 18, 1986,[footnote omitted] then to December 15, 1986, and again to February 2, 1987. On

S.W.2d 530, 531 (Tex.Crim.App.1990). Rehearing was denied on December 19, 1990, and our Mandate issued on January 4, 1991. A new attorney was appointed to represent appellant on March 4, 1991, for purposes of his second trial. On March 26, 1991, appellant filed a Motion for Speedy Trial and a Motion to Dismiss based upon his constitutional right to a speedy trial. These motions were denied. Appellant also filed four motions for a continuance, two of which were granted. Appellant's second trial began on November 4, 1991, and appellant was convicted and sentenced to death on November 26, 1991.

The framework for Sixth Amendment speedy trial analysis was set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). No definite period of time has been held to be a per se violation of a defendant's right to a speedy trial; alleged violations are considered on a case by case basis. *Id.* at 529–30, 92 S.Ct. at 2191–92. The reviewing court must consider four factors: the length of the delay, the reasons for the delay, whether the defendant asserted his speedy trial rights, and any resulting prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2191.

The length of the delay has been described as a "triggering mechanism." *Id.* There must be enough of a delay to be presumptively prejudicial to the defendant before it becomes necessary to consider the other three factors. *Id.* The clock begins to run for purposes of speedy trial analysis when the defendant has become an accused (either charged or arrested). *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). Approximately eight and one half years passed between appellant's initial indictment on April 28,

1983, and appellant's second trial. We hold, and the State concedes, that this time period is of sufficient length that the other factors set forth in *Barker v. Wingo* must be considered.

The State has the initial burden of justifying a lengthy delay. *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex.Crim.App.1976). In *Barker v. Wingo*, the Supreme Court discussed considerations relevant to the issue of justification for the delay:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192.

The State seeks to excuse the delay here for a variety of reasons. The State first points out that they were ready for trial as soon as appellant's wife obtained the initial divorce decree in April of 1983, and contends the trial court delayed the case until resolution of the appeal. The record supports the State's contention. There is no evidence that the State sought to delay the case; to the contrary, the State openly opposed the trial court's decision to postpone the trial pending the appeal of the divorce. The trial court's decision to delay the trial is "[a] more neutral

---

January 7, 1987, the court reporter wrote defense counsel and informed them that her pretrial stenographer's notes had been stolen from her storage unit.... This Court granted a final extension of time to file a transcription of the court reporter's notes, setting a deadline of June 3, 1987.

On May 29, 1987, the trial judge filed a "Substituted Transcript".... On June 3, 1987, the district court notified appellant's counsel that the record on appeal had been

completed. Appellant filed an Objection to the Transcript in the trial court on June 10, 1987, and in this Court on June 11, 1987.

On June 19, 1987, a hearing was held on the State's Motion to Substitute the Record. *Emery*, 800 S.W.2d at 531–32. Concluding that the record was incomplete, lacking a statement of facts and transcript with regard to a pretrial hearing, we reversed appellant's conviction and remanded the case for a new trial.

reason" and as such should be weighted accordingly.

Also causing delay was the loss of the court reporter's notes from the first trial, due in no part to the fault of either party. Finally, the passage of time between the reversal of appellant's first conviction and his second trial was not overly long and some of that delay was due to the granting of appellant's requests for continuance.[12] There is no indication in the record that the State caused any delay during this period.

With regard to the third factor for consideration, whether appellant asserted his right to a speedy trial, the record reflects that appellant did not assert his right in a timely or persistent manner. Appellant did not object on speedy trial grounds during the pending appeal of his divorce; not until the divorce action was affirmed by the highest state court (and the potential for exclusion of appellant's wife's testimony was gone), did appellant move to dismiss on speedy trial act grounds.[13] Appellant's first objection on constitutional speedy trial grounds was not made until March 26, 1991. However, this motion was immediately followed by four motions for continuance, undercutting appellant's claim that he wanted an immediate trial. Appellant's sparse and delinquent assertions of his right to a speedy trial weigh in favor of the State's position. *See McCarty v. State*, 498 S.W.2d 212, 215–16 (Tex.Crim.App.1973); *Grayless v. State*, 567 S.W.2d 216, 221 (Tex. Crim.App.1978); *Phipps v. State*, 630 S.W.2d 942, 946 (Tex.Crim.App.1982); *Easley v. State*, 564 S.W.2d 742, 745 (Tex.Crim.App.), *cert. denied*, 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978).

Finally, appellant does not present a compelling case that he was prejudiced by the delay. Prejudice is to be considered in light of the interests that the right to a speedy trial was designed to protect. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. These interests include prevention of extended pretrial incarceration, minimization of anxiety over pending charges, and most importantly the prevention of actual prejudice to the defendant's ability to present a defense. The defendant has the initial burden to make a showing of prejudice. *Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App.1973).

Appellant's claim that he "suffered the loss of personal and business records" is not supported by his references to the record. Appellant also alleges that he was prejudiced because "a material witness was no longer able to recall the events that occurred in October of 1979." We have reviewed the entire testimony of the witness in question and cannot conclude that appellant was prejudiced by her testimony or her lack of memory. The witness in question, a State's witness, testified that she was uncertain about whether she saw appellant the night of the offense. The record also reflects that she had always been uncertain about whether she saw appellant on the night in question. Her testimony was rife with inconsistencies which she readily admitted on direct as well as cross-examination. Appellant appears to be implying that, if not for the passage of so much time, the witness would have affirmatively exculpated appellant. The record does not support this position. *See Easley*, 564 S.W.2d at 745–46. We also note that much of the delay presented was beneficial, or at least presented a potential benefit, to appellant. The appeal of the divorce might have lead to a reversal of the divorce decree, in which case appellant's wife could not have testified against appellant. *See fn.* 6, *supra.* In addition, the delay caused by the appeal of appellant's first conviction was beneficial to appellant in affording him a new trial and a second chance at being acquitted.

Balancing the factors set forth in *Barker v. Wingo*, we cannot conclude that appellant was deprived of his right to a speedy trial. The extreme remedy of dismissal is not warranted by the facts in this case. Point of error one is overruled.

---

**12.** Appellant's second trial was originally set for August 19, 1991, but due to the granting of two of appellant's motions for continuance, trial was reset twice and did not begin until November 4, 1991.

**13.** It is unclear whether this motion also urged a Sixth Amendment violation as the motion itself is not in the record before us.

In his second point of error appellant claims "the court erred in admitting grisly color photographs into evidence during the guilt/innocence phase of the appellant's trial, in that their prejudicial impact outweighed their probative value and served only to inflame the minds of the jury." Specifically, appellant complains of State's Exhibits 6, 12–20, 27, and 28 which are photographs of the victim taken at the scene or at the morgue. All are 8 × 10 color photographs with the exception of Exhibits 18 and 19 which each include an 8 × 10 color photograph as well as a 3 × 5 copy of the 8 × 10 photograph.

The deceased's lower torso is visible in State's Exhibit 6. The photograph was utilized at trial by a State's expert in describing the blood pattern analysis and in showing that the cut to the deceased's pubic area was made after her death. Exhibits 12, 13, and 14 depict the deceased from different angles and show her relationship to the room. One of the State's experts referred to these photographs in testifying that the blood patterns on the floor indicated that the deceased did not live or struggle long. Exhibit 15 depicts the deceased and the bed next to her. It is the only close shot of the bed and also shows the deceased's left hand in a clenched position. Exhibit 16 is a shot of the deceased's upper torso. An expert utilized this photograph to show that the deceased's hair had been moved after she had begun bleeding to expose her left breast. Similarly, Exhibit 17 shows blood prints on the deceased's torso, arms, and right side as well as depicting that the deceased's hair was matted with blood. An expert testified that this indicated that pressure had been applied to the hair after bleeding had begun. Exhibit 18 shows matching blood patterns on the deceased's thighs and abdomen. An expert relied upon this photograph in concluding that the deceased's legs had been raised to her torso after bleeding had begun. Exhibit 19 is the only crime scene photo which shows a linear bruise to the deceased's forehead. Exhibit 20 is the only photo showing the deceased's clenched right hand. Exhibits 27 and 28 are photographs taken in the morgue after the deceased's body had been cleaned of blood. They are the only shots in which the stab wounds are clearly visible. They show different angles and different injuries. An expert utilized these photographs to indicate the manner in which the deceased was killed and to demonstrate that the deceased had been grabbed and restrained.

Texas Rule of Criminal Evidence 403 governs the admissibility of allegedly inflammatory photographs. Rule 403 provides that:

> Although relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex.R.Crim.Evid. 403 (emphasis added). Several factors should be considered in determining whether the probative value of the photos at issue is substantially outweighed by the danger of unfair prejudice to the defendant:

> ... the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed [, and] ... the availability of other means of proof and the circumstances unique to each individual case.

*Id.* We have consistently held that photos are generally admissible where verbal testimony about the same matters is admissible. *Hernandez v. State*, 819 S.W.2d 806, 819 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992); *Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim.App.1991).

We conclude that the photographs at issue did not present a danger of unfair prejudice that substantially outweighed their probative value. They are relevant to the manner of the deceased's death as well as the offender's state of mind. Each of the photographs differs from the others in some respect. Most were referred to by an expert in describing the manner or nature of the offense, heightening their probative value. Although the photographs are undeniably gruesome, are in color and the victim is unclothed, they reflect the nature of the crime and "are not

so gruesome as to be unfairly prejudicial." *Hicks v. State,* 860 S.W.2d 419, 426 (Tex. Crim.App.1993), *pet. for cert. filed* (Sept. 28, 1993); *Fuller v. State,* 829 S.W.2d 191, 206 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993). Therefore, the trial court did not abuse its discretion in admitting the photographs. Point of error two is overruled.

■ In point of error four appellant claims article 37.071 of the Code of Criminal Procedure is facially unconstitutional because it requires that the jurors be misinformed about the effect of a single juror's vote on the sentence imposed.

In order to receive the death penalty in Texas under the law in effect for purposes of appellant's conviction, all twelve jurors must answer "yes" to the special issues presented to them. TEX.CODE CRIM.PROC.ANN. art. 37.-071(d)(1) (Vernon 1984). To make an affirmative finding of "no," ten jurors must agree. *Id.* at 37.071(d)(2). In spite of this fact, if any juror votes against a special issue, the trial court is required to sentence the defendant to life in prison (the same result as if ten jurors had voted "no"). *Id.* at 37.071(e). The jurors are not informed of this effect, however.

Article 37.071(e) [14] provided as follows:

... The court, the attorney for the state, or the attorney for the defendant may not inform a juror or a prospective juror of the effect of failure of the jury to agree on an issue submitted under this article.

TEX.CODE CRIM.PROC.ANN. art. 37.071(e) (Vernon 1981) (now contained in article 37.071 § 2(a)). We have consistently upheld the constitutional validity of this statutory scheme in the face of similar arguments. *See, e.g., Nobles v. State,* 843 S.W.2d 503, 508–10 (Tex.Crim.App.1992); *Cantu v. State,* 842 S.W.2d 667, 692–93 (Tex.Crim.App.1992),

*cert. denied,* —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993); *Draughon v. State,* 831 S.W.2d 331, 337–38 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993). The gist of these holdings has been that there is no constitutional violation in not informing the jurors of the effect of their individual answers. *See Draughon,* 831 S.W.2d at 338. Further, nothing in the statute prohibited any single juror from voting as his conscience dictated, thereby resulting in a life sentence by operation of law. [15] Appellant presents us with no reason to overturn these opinions. Point of error four is overruled.

■ In point of error five appellant claims that article 37.071 is unconstitutional on its face and as applied to appellant because it "precluded the jury from considering evidence in mitigation of appellant's sentence." In point of error six appellant claims the trial court "erred in charging the jury regarding how mitigating evidence was to be considered and applied".

Appellant points to evidence of an "unstable and abusive homelife", parental neglect, testimony that appellant had expressed an interest in counseling troubled youth if ever released from prison, and testimony of a psychologist that appellant's abusive and neglectful upbringing could have been a causal factor in the offense, as far exceeding the scope of the special issues. Appellant also contends the mitigation instruction given was a "clumsy attempt" at a jury nullification charge.

We note initially that this Court, relying on various decisions of the United States Supreme Court, has concluded that article 37.-071, in substantively the form at issue in this case, suffers from no facial infirmity. *Muniz v. State,* 851 S.W.2d 238, 257 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 114 S.Ct.

---

**14.** We note that although appellant actually directs us to Article 37.071(g), as amended in 1985, the applicable provision is subsection (e), as amended in 1981. We observe that the provision cited by appellant and the applicable provision are virtually identical.

**15.** We observe further that the instructions given clearly allowed the jurors to express and give

effect to their individual views. The court's instructions read as follows:

If there is any Special Issue on which the vote of the jurors is not unanimously "Yes", or not at least ten in favor of an answer of "No", then there shall be no answer for that Special Issue and the Presiding Juror will not sign his or her name to any answer form for that Special Issue.

116, 126 L.Ed.2d 82 (1993). Moreover, there was no constitutional defect in the manner in which the statute was applied to appellant. We need not reach the question of whether or not the evidence presented by appellant required a special instruction because a mitigating evidence instruction was given. The instruction given was nearly identical to the instruction approved of in *Fuller,* 829 S.W.2d at 209.[16] Appellant relies on *Rios v. State,* 846 S.W.2d 310 (Tex.Crim.App.1992), as authority. We disagree. The instruction allowed the jury to adequately consider and give effect to any mitigating evidence presented. Points of error five and six are overruled.

In point of error seven appellant claims that article 37.071 is unconstitutional on its face and as applied to appellant because it "forbade a single juror to give mitigating effect to his desire to return a life sentence, by requiring ten votes to return a finding of mitigating evidence", in violation of the Eighth Amendment to the United States Constitution. We held to the contrary in *Rousseau v. State,* 855 S.W.2d 666, 686–87 (Tex.Crim.App.) (holding that article 37.071 did not violate Eighth Amendment by "creating the impression that the jury must be unanimous in answering 'no' to the special issues in order to give effect to the mitigating evidence"), *cert. denied,* — U.S. —, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). Point of error seven is overruled.

■ In his eighth point of error, appellant alleges a violation of his right to equal protection of the laws under the Fifth and Fourteenth Amendments to the United States Constitution.[17] He argues that because evidence of prior unadjudicated offenses may be introduced at the punishment phase of a capital trial, but may not be introduced at the punishment phase of a non-capital trial, his right to equal protection has been violated. We have previously addressed and uniformly rejected this argument. *See, e.g., Felder v. State,* 848 S.W.2d 85, 98 (Tex.Crim.App.1992), *cert. denied,* — U.S. —, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Motley v. State,* 773 S.W.2d 283, 294 (Tex.Crim.App.1989); *Hogue v. State,* 711 S.W.2d 9 (Tex.Crim.App.), *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). Appellant does not note, distinguish or reargue these cases in his brief. We are not compelled to reconsider our long-standing precedent. Point of error eight is overruled.

The judgment of the trial court is affirmed.

CLINTON, J., concurs.

---

**16.** The instruction reads as follows:

When you deliberate about the questions posed in the Special Issues, you are to consider any mitigating circumstances supported by the evidence presented in both phases of the trial. A mitigating circumstance may be any aspect of the defendant's background, character, and record, or circumstances of the crime, which you believe makes a sentence of death inappropriate in this case. If you find there are any mitigating circumstances, you must decide how much weight they deserve and give them effect when you answer the special issues. If you determine, in consideration of this evi-

dence, that a life sentence, rather than a death sentence, is an appropriate response to the personal moral culpability of the defendant, you are instructed to answer the Special Issue under consideration "No". You need not agree on what particular evidence supports a "No" answer.

**17.** Appellant also claims a violation of equal protection under "similar provisions of the laws and Constitution of the State of Texas." Because appellant does not specify what laws or constitutional provisions are implicated, he has not preserved his state law claim.