# NO. 12-11-00350-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CARLOS P. STIFF,*<br>*APPELLANT* | § | *APPEAL FROM THE 188TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *GREGG COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Carlos P. Stiff appeals his conviction for capital murder, for which he was sentenced to imprisonment for life.  In one issue, Appellant argues that the evidence is legally insufficient to support the trial court's judgment.  We affirm.

### Background

Alton Hicks, a man in his seventies, lived alone in Longview, Texas.  As a result of his impaired vision, Hicks required assistance for household tasks.  To meet these needs, he employed Lasinda Crockett, a home health care assistant.  Crockett is Appellant's mother.

Soon after she began working for Hicks, Crockett brought a friend, Patricia Jacobs, to Hicks's house.  Shortly thereafter, Hicks discovered that some of his money was missing.  Hicks believed Crockett and Jacobs had stolen his money, and attempted to report the offense to the police.  But Jacobs's husband came to Hicks's house and impersonated a police officer.  As a result, Hicks unwittingly reported the matter to Jacobs's husband instead of to the police.  When Hicks attempted to follow up on the report with the Longview Police Department, he and the

police became aware of the deception. A police investigation ensued regarding the theft.

Because of her criminal record, Crockett was extremely worried that she would be implicated in the theft. As a result of Hicks's report, the home health care employer arranged a meeting with Crockett. Thereafter, Crockett told Jacobs that they should kill Hicks. Around that same time, she posted bond for Appellant, who was in jail. The day before the scheduled meeting with her employer, Crockett picked up Appellant from his girlfriend's home in Carthage, Texas, and the two traveled to Longview. Early the next morning, Hicks was murdered.

Crockett and Appellant returned to Carthage. While they were en route, Appellant called his girlfriend, Whitney Williams. Because he did not properly disconnect the call, Williams was able to hear Appellant's subsequent conversation with Crockett, during which they discussed their disposing of bloody clothes and a surveillance video they took from Hicks's house.[1] When Appellant arrived in Carthage, he admitted to Williams that he and his mother killed Hicks. Specifically, Appellant told Williams that he shot Hicks in the head and cut his throat.

The police discovered Hicks's body and began investigating. Soon their investigation caused them to suspect that Crockett and Appellant were involved in Hicks's murder. Initially, both Crockett and Appellant denied any involvement. Eventually, however, Crockett confessed to the crime, claiming she had acted alone and killed Hicks because he filed a police report against her.

Physically, Hicks was much heavier than Crockett. And while Hicks's vision was impaired, he could still see. The attack that resulted in his death was vicious and brutal—Hicks was stabbed more than fifty times by at least three different knives. There was evidence that the struggle between Hicks and his assailant or assailants was extremely violent. Thus, the police did not believe Crockett committed the murder unaided. Rather, they believed that Appellant abetted her.

As their investigation continued, the police questioned Appellant's uncles, Tyrone Turner and Terry Turner. Tyrone told police he had spoken to Appellant about the murder. According to Tyrone, Appellant told him that "some crazy stuff went down." Tyrone further stated that

---

[1] Hicks had a security camera installed in his home.

2

when he asked Appellant who killed the man, Appellant walked away, but that Appellant later admitted to Tyrone that he cut Hicks's throat. Similarly, Terry told the police that Appellant confessed to him that he killed Hicks.

Appellant was charged by indictment with capital murder for killing Hicks during the course of committing or attempting to commit the offense of robbery or, alternatively, the offense of retaliation. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. At trial, Tyrone and Terry testified that they did not know if Appellant took part in Hicks's murder. However, the State introduced Tyrone's recorded statement into evidence and played the recording for the jury. Ultimately, the jury found Appellant "guilty" of murdering Hicks in the course of committing or attempting to commit the offense of retaliation. The trial court sentenced Appellant to imprisonment for life, and this appeal followed.

<u>EVIDENTIARY SUFFICIENCY</u>

In his sole issue, Appellant argues that the evidence is legally insufficient to support the trial court's judgment. Specifically, Appellant contends that there is legally insufficient evidence to support that he assisted Crockett in murdering Hicks.

**Standard of Review**

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899. Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See Brooks*, 323 S.W.3d at 899–900. The duty of a reviewing court

3

is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

To support Appellant's conviction for capital murder, the State was required to prove that Appellant intentionally or knowingly caused Hicks's death while in the course of committing or attempting to commit retaliation against Hicks. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2012). To establish retaliation as applicable to this case, the State was required to prove that Appellant intentionally or knowingly harmed or threatened to harm Hicks by an unlawful act in retaliation for or on account of the service or status of Hicks as a witness or prospective witness or a person who had reported or who Appellant knew intended to report the occurrence of a crime. TEX. PENAL CODE ANN. § 36.06(a) (West 2011). Finally, Appellant is criminally responsible for capital murder committed by Crockett's conduct if he acted with the intent to promote or assist the commission of the offense, or if he solicited, encouraged, directed, aided, or attempted to aid Crockett to commit the offense. TEX. PENAL CODE ANN. § 7.02(a) (West 2011).

**Application**

Appellant concedes that Crocket's testimony provides evidence of "every element of the indictment against [him] save one: the nature of his culpability, if any." Regarding Appellant's culpability, the record contains several pieces of evidence. First, the physical evidence at the scene established that an extremely violent struggle occurred. Given Crockett's physical size compared to Hicks's, the jury could reasonably have concluded that Crockett did not act alone. Multiple witnesses testified that Appellant was with Crockett on the day that Hicks was murdered.

4

Therefore, Appellant had the opportunity to assist Crockett. Finally, several witnesses testified that Appellant admitted he participated in Hicks's murder.

However, the record also contains evidence contrary to the jury's verdict. Williams testified that Appellant told her he shot Hicks and cut his throat. But Hicks was not shot. Further, even though physical evidence linked Crockett to the crime scene, no such evidence linked Appellant to the crime scene. And while Appellant had the opportunity to assist Crockett, no witness testified that they saw Appellant at Hicks's house. Additionally, Tyrone's and Terry's testimony at trial contradicted their previous statements to police. Finally, Crockett took sole responsibility for the murder and claimed that she was capable of killing Hicks unaided.

Yet, we are mindful that Appellant's confessions may be considered in our evidentiary sufficiency analysis. *See* ***Emery v. State***, 881 S.W.2d 702, 705–06 (Tex. Crim. App. 1994). Appellant confessed to Williams, Tyrone, and Terry that he participated in the murder. And although Tyrone and Terry changed their respective testimonies at trial, we defer to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See* ***Brooks***, 323 S.W.3d at 899–900. Accordingly, the jury could reasonably conclude that Tyrone and Terry were being truthful when they told the police that Appellant admitted to being involved in the murder. Further, Crockett admitted that Hicks was murdered in retaliation for his having filed a police report concerning the theft of his money.

Having examined the evidence of record in the light most favorable to the verdict, we conclude that the jury could have determined beyond a reasonable doubt that Appellant participated in committing Hicks's murder in retaliation for Hicks's accusing his mother of theft. *See* TEX. PENAL CODE ANN. §§ 7.02(a)(2) (West 2011) (criminal responsibility for conduct of another), 19.03 (capital murder) (West Supp. 2012); 36.06(a) (retaliation) (West 2011). Therefore, we hold that the evidence is sufficient under the ***Jackson v. Virginia*** standard to support the trial court's judgment. Appellant's sole issue is overruled.

5

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

## BRIAN HOYLE
Justice

Opinion delivered January 23, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 23, 2013**

**NO. 12-11-00350-CR**

**CARLOS P. STIFF,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

___

Appeal from the 188th Judicial District Court

of Gregg County, Texas. (Tr.Ct.No. 38,976-A)

___

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*