

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP–76,926

**JERRY HARTFIELD, Petitioner-Appellee/Cross Appellant**

**v.**

**RICK THALER, Director, Texas Department of Criminal Justice,
Correctional Institutions Division, Respondent-Appellant/Cross-Appellee**

### ON CERTIFIED STATE CRIMINAL LAW QUESTION
### IN CASE NO. 11-40572
### FROM THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J.,
PRICE, WOMACK, JOHNSON, HERVEY, COCHRAN, AND ALCALA, J.J.,
joined. KEASLER, J.J., concurred.

## O P I N I O N

Petitioner was convicted of capital murder and sentenced to death in June of 1977.

On direct appeal we reversed his conviction and ordered a new trial. *Hartfield v. State*,

645 S.W.2d 436, 441 (Tex. Crim. App. 1980). The State filed a motion for rehearing,

which we denied on January 26, 1983. Mandate issued on March 4, 1983. Although the

mandate reversing the conviction had already issued, the governor signed an order to

commute Petitioner's sentence from death to life imprisonment on March 15, 1983. The Fifth Circuit certified the following question to this Court: "What was the status of the judgment of conviction after these events occurred?"

## PROCEDURAL HISTORY

A jury convicted Petitioner of capital murder and sentenced him to death. On direct appeal, he complained that a member of the venire panel was improperly excluded from the jury. We agreed and held that under *Witherspoon v. Illinois*, 391 U.S. 510 (1968), this error violated Petitioner's Sixth and Fourteenth Amendment rights. We reversed the conviction and death sentence and remanded the case to the trial court for a new trial. The State filed a motion for rehearing, arguing that Petitioner failed to properly preserve error. *Hartfield v. State*, 645 S.W.2d 436 (Tex. Crim. App. 1983) (opinion on rehearing). We overruled this argument, and we disagreed with the State that the error was harmless. We handed down our opinion on rehearing on January 26, 1983, stating that we "reluctantly" denied the State's request that we vacate the death sentence and reform the sentence to life imprisonment. *Id*. at 442. We held that "the 15 day period between the rendition of our decision and the date that the mandate issues is a 'reasonable time to seek commutation of "sentence" from the Governor,'" and we denied the motion for rehearing. *Id*. Instead of pursuing the remedies we suggested, the State filed a motion for leave to file a second motion for rehearing, which we also denied.[1] On March 4,

---

[1]In 1983, when the State filed its motion for leave to file a second motion for rehearing, Tex. Cr. App. R. 309(f) was in effect. It stated, "If the Court delivers an opinion on rehearing

1983, we issued our mandate reversing the conviction and remanding the cause for a new trial. Five days after mandate issued, the trial court acknowledged receipt of our mandate and, on March 23, 1983, the trial court returned a postcard to the Court of Criminal Appeals saying that the execution of the mandate had been carried out. The card said "Executed on March 16, 1983 by Governor Mark White." The trial court added a notation to the card stating "Death Sentence commuted to Life by Governor." There was no further action by the trial court or this Court. Acting in accordance with the governor's commutation of the sentence to life in prison, the Department of Criminal Justice maintained custody of Petitioner.

In 2006, Petitioner filed a pro se application for writ of habeas corpus, and in 2007 he filed a pro se application for writ of mandamus to compel a new trial. We denied both. He filed a second application for writ of habeas corpus in 2007, which we dismissed as subsequent under Code of Criminal Procedure Article 11.07, Section 4. Petitioner then filed a pro se application for writ of habeas corpus with the United States District Court for the Southern District of Texas, claiming that his Sixth and Fourteenth Amendment rights had been violated. The Southern District issued a report stating that Petitioner was not in custody pursuant to the judgment of a state court because the trial court's judgment

which changes the disposition of the cause from that on original submission, the losing party may file a motion for rehearing within 15 days after said opinion is delivered." It is likely that we denied the State's motion for leave to file a second motion for rehearing because our opinion on rehearing did not change the disposition of the cause from that on original submission; thus a second motion for rehearing was not a viable option for the State.

of conviction ceased to exist when we issued mandate and that the governor's commutation came too late. The report said that the Antiterrorism and Effective Death Penalty Act one-year statute of limitations under 28 U.S.C. Section 2244(d)(1) did not apply because Petitioner was not being held "pursuant to the judgment of a State court" and Petitioner's claim was actually a pretrial writ under 28 U.S.C. Section 2241. However, because Petitioner was confined in the Eastern District, the case was transferred. The United States Magistrate Judge for the Eastern District issued a report recommending that the application be dismissed for failure to exhaust a Speedy Trial Clause claim in the state court. *Hartfield v. Director, TDCJ-CID*, 2011 U.S. Dist. LEXIS 46285 (E.D. Tex., January 10, 2011). After overruling the objections of the parties, the District Court adopted the recommendations of the Magistrate Judge and dismissed the application for writ of habeas corpus. *Hartfield v. Director, TDCJ-CID*, 2011 U.S. Dist. LEXIS 46292 (E.D. Tex., April 29, 2011). Petitioner appealed that decision in the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit issued an opinion in *Hartfield v. Thaler*, 699 F.3d 394 (5th Cir. October 9, 2012). The State filed a motion for rehearing, which was struck by the Fifth Circuit. Acting on its own motion, the Fifth Circuit withdrew the opinion and submitted a certified question of law to this Court. The Fifth Circuit stated:

> The predicate events are that the Texas Court of Criminal Appeals reversed a district court's judgment of conviction and capital sentence, did not address the defendant's other claims of error, and ordered a new trial due to a *Witherspoon* error. Later, the court resolved two motions for leave to file

for rehearing and issued its mandate that still required a new trial, but no new trial was ever conducted because the Governor purported to commute the defendant's sentence.

*Hartfield v. Thaler*, 2012 U.S. App LEXIS 24480, *11-12 (5th Cir. Tex. Nov. 28, 2012) (opinion on rehearing). The Fifth Circuit asked us to determine the status of the judgment of conviction after these events occurred.

## ARGUMENTS OF THE PARTIES

Petitioner argues that, when mandate issued, this Court's order for an entirely new trial became final. He says that it was the same as if the jury had been unable to agree on a verdict and that his sentence no longer exists. The legal effect of vacating the judgment and returning the case for a new trial is as though there had been no trial. Petitioner argues that he was properly granted a new trial and, when the order granting the new trial became final, his conviction and sentence were erased. Thus, there was no sentence to commute. His brief states that, "Mr. Hartfield has remained in prison under the authority of the Director for almost thirty years under no conviction or sentence."

The State says that we should not answer this certified question because it is not a determinative question of Texas criminal law. According to the State, the question is whether Petitioner is "a person in custody pursuant to the judgment of a State court" within the meaning of 28 U.S.C. section 2244(d)(1), which is a federal-law question that can be answered without this Court's resolution concerning the validity of the judgment. The State says that this certified question will not fix, settle, or define the reach of 28

U.S.C. section 2244(d)(1). However, if we do answer the certified question, then the State says we should conclude that the trial court's judgment of conviction is valid. The State argues that our mandate gave the State a chance to preserve the judgment of conviction by allowing a 15-day window to seek commutation to a life sentence and that the State did seek commutation of Petitioner's sentence from the governor within five days of the Court's decision denying rehearing. According to the State, the 15-day window opened on March 1, 1983, when we denied leave to file the State's second motion for rehearing. The State says that, because the governor commuted the sentence on March 15, 1983, the commutation was within the 15-day window.

The State says that the judgment did not cease to exist on the date mandate was issued and that the mandate is to be read along with the opinion, which gave 15 days for the governor to commute. The State concludes that the commutation was timely and that it preserved the judgment of conviction. The State argues that the commutation solved the penalty-phase error and preserved the judgment of conviction and that Petitioner has been lawfully detained.

## ANALYSIS

### *State Law Question*

Under Texas Rule of Appellate Procedure 74.1, we may answer questions of Texas criminal law certified to us by any federal appellate court if the court is presented with determinative questions of Texas criminal law having no controlling Court of Criminal

Appeals precedent. We may also decline to answer the questions certified to us. The State urges us to decline to answer this certified question and argues that our answer will not fix, settle or define the reach of 28 U.S.C. § 2244(d)(1) and will not affect the outcome of Petitioner's federal habeas action. We disagree. We are not considering whether Petitioner is entitled to federal habeas relief. Rather, we are answering the determinative question of Texas criminal law of whether there was a judgment of conviction at the time the governor issued a commutation order.

### *Judgment of Conviction*

Before it was amended in 1987, Texas Code of Criminal Procedure Article 44.29 required that, when punishment was assessed by a jury and a new trial was awarded on the basis of punishment phase error, the defendant would receive a complete new trial rather than just a new punishment phase. Thus, when we concluded on appeal that the exclusion of one of the members of the venire violated Petitioner's Sixth and Fourteenth Amendment rights and that the death penalty could not be imposed, Petitioner was entitled to an entirely new trial. *See Whan v. State*, 485 S.W.2d 275 (Tex. Crim. App. 1972) (Onion, J., dissenting) ("Where it is conceded that the mandate of *Witherspoon* has been violated, it has been the consistent policy of this court that, although the error is to penalty alone, the cause must be reversed for an entirely new trial. . . . A jury alone may assess the death penalty.") *See also Turner v. State*, 485 S.W.2d 282 (Tex. Crim. App. 1972) (stating that "this court is without authority to either pass sentence or reduce the

punishment assessed by a jury. And, while we may remand solely on the issue of punishment where punishment was originally assessed by the court, we may not do so where punishment was assessed by the jury.") On the State's motion for rehearing in *Turner*, we set aside our reversal of the judgment because the governor had signed a proclamation commuting the appellant's sentence. This case is distinguishable from *Turner*, however, because here the commutation was signed after we issued our mandate reversing Petitioner's conviction and sentence.

In our opinion on the State's motion for rehearing in this case, we recognized that the State had requested time to seek commutation of the sentence from the governor and we noted the State's options for seeking commutation. We said that the State could obtain the commutation in the 15-day period between our ruling on the motion for rehearing and the date mandate issued and also cited our rule regarding staying the mandate for up to 60 days.[2] Additionally, during the same term the mandate was issued, the State could have filed a motion to withdraw the mandate. *See Deramee v. State*, 379 S.W.2d 908 (Tex. Crim. App. 1972). The State did not exercise any of these options, and our denial of the State's motion for leave to file a second motion for rehearing did not, as the State argues, re-start the clock on the 15-day window.[3] We issued our mandate and

---

[2]At the time our opinion on the State's motion for rehearing was handed down, Court of Criminal Appeals Rule 311 allowed the Court to stay the mandate for not more than 60 days on verified motion of a party.

[3]Court of Criminal Appeals Rule 310 stated, "A decision of the Court shall be final at the expiration of 15 days from the ruling on the final motion for rehearing or from the rendition of

the judgment was final 15 days after our ruling on the motion for rehearing. As soon as mandate issued, Petitioner's conviction and sentence were vacated, our order for a new trial became final, and the case was returned to the point it would have been had there never been a trial.[4]

The purpose of commutation is to reduce a sentence that was already imposed. Article IV, Section 11, of the Texas Constitution grants power of commutation "after conviction." Here there was no conviction, and no sentence to reduce. Because there was no longer a death sentence to commute, the governor's order had no effect. As Judge Onion stated in his dissenting opinion in *Whan,*

> While the Governor, acting upon the recommendation of the Board of Pardons and Paroles, may grant a pardon after a person has been found guilty, and prior to the assessment of punishment, he could not commute the punishment if none has been assessed. If this court has reversed a conviction and issued its mandate, it would not appear that the Governor, prior to a new trial, could grant a pardon or commute the punishment previously assessed.

485 S.W.2d at 280.

### *State Remedies for Pretrial Claim*

When Petitioner filed a state application for writ of habeas corpus, he filed it under

---

the decision if no motion for rehearing is filed."

[4]At the time of Petitioner's appeal, Code of Criminal Procedure Article 44.08 provided: "The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument." Article 44.08 was repealed in 1986 and was replaced with Rule of Appellate Procedure 21.9(b), which says, "Granting a new trial restores the case to its position before the former trial . . . ."

Code of Criminal Procedure Article 11.07. Because Article 11.07 relates only to post-conviction applications for writ of habeas corpus and there was no judgment of conviction against Petitioner, this was not the proper procedure, and we denied his application. He also filed an application for leave to file a petition for mandamus asking us to compel a new trial. This too was the improper procedure because our reversal of his conviction left him in the same position as if he had never had a trial. If his motion to set aside the indictment for failure to provide a speedy trial was sustained, then Petitioner would be discharged under Article 28.061 of the Texas Code of Criminal Procedure. Alternatively, Petitioner could have filed an application under Article 11.08. Therefore, the United States District Court for the Eastern District is correct that Petitioner has not exhausted state remedies. Because our denial of Petitioner's applications for writs of habeas corpus and mandamus were based on his failure to follow the proper procedure, it is not a forgone conclusion that Petitioner's state claims will be denied and exhaustion of state remedies is not futile.

## CONCLUSION

The March 4, 1983 mandate issued by this Court reversed the judgment of conviction, and no court has entered any order thereafter to alter that reversal. Because some penalty must be assessed for the authority of commutation to be exercised and Petitioner's death sentence was erased by our mandate, the governor's proclamation of commutation was a nullity. The status of the judgment of conviction is that Petitioner is

under no conviction or sentence.

Delivered: June 12, 2013

Publish