Jerry HARTFIELD, Appellant,

v.

The STATE of Texas, Appellee.

NUMBER 13–15–00428–CR

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Delivered and filed January 19, 2017

Discretionary Review Refused
May 17, 2017

David R. Dow, Jeffrey R. Newberry, Houston, TX, for Appellant.

Steven E. Reis, District Attorney, Lindsay K. Deshotels, Assistant District Attorney, Bay City, TX, Joseph P. Corcoran, Assistant Attorney General, Austin, TX, for Appellee.

Before Justices Rodriguez, Benavides, and Longoria

## OPINION

Opinion by Justice Benavides

Nearly four decades ago, a Wharton County jury convicted appellant Jerry Hartfield of the capital murder of Eunice Lowe and assessed his punishment at death. On automatic review, the Texas Court of Criminal Appeals found error related to the exclusion of a potential juror, vacated Hartfield's conviction, and ordered a new trial in its entirety. *See Hartfield v. State (Hartfield I)*, 645 S.W.2d 436, 437–41 (Tex. Crim. App. 1980) (en banc).

In its motion for rehearing to the court of criminal appeals, the State sought two alternative forms of relief: (1) to "reform the judgment so as to reflect a punishment of life imprisonment"; or (2) "allow them a 'reasonable time to seek commutation of sentence from the Governor.'" *Id.* at 442 (op. on reh'g). On January 26, 1983, the court of criminal appeals denied the State's motion and advised the State in an opinion on rehearing that the "15[–]day period between the rendition of our decision and the date that the mandate issues is a 'reasonable time to seek commutation of sentence from the Governor'" and further that the rules of criminal appellate procedure in place at the time allowed for a stay of mandate "for not more than 60 days." *Id.*

The court of criminal appeals issued its mandate on March 4, 1983. Eleven days later, the governor signed an order commuting Hartfield's sentence from death to life imprisonment.

For the next thirty-two years, Hartfield remained incarcerated effectively holding a post-indictment, pre-trial status and was under no conviction or sentence. *See Hartfield v. Thaler (Hartfield II)*, 403 S.W.3d 234, 240 (Tex. Crim. App. 2013) (answering a certified question from the United States Court of Appeals for the Fifth Circuit).

In August of 2015, the State finally retried Hartfield for capital murder. The jury found Hartfield guilty of murder and sentenced him to life imprisonment.

By his first issue, which is dispositive of this appeal, Hartfield asserts that the State violated his Sixth Amendment right to a speedy trial, and that the trial court erred in failing to grant his pre-trial motion to dismiss his indictment. Because we agree with Hartfield, we reverse Hartfield's conviction and render an order of dismissal with prejudice.

## I. BACKGROUND [1]

This Court,[2] and perhaps many people throughout this country,[3] are familiar with the unique and unusual circumstances of Jerry Hartfield's case. For those who are not, we will recite the facts again.

### A. 1977—2006

Hartfield sat in prison for thirty-two years without a conviction or sentence, after the Texas Court of Criminal Appeals in 1983 vacated his 1977 capital murder conviction and corresponding death penalty sentence and ordered a new trial. Despite this ruling by Texas's highest criminal court, the State sought and ultimately obtained a commutation order from then-Texas governor Mark White, purporting to change Hartfield's sentence from death to life imprisonment.

Robert Scardino represented Hartfield at his 1977 trial, as well as on direct appeal to the court of criminal appeals, and continued his representation until his with-

---

1. Because of the unusual procedural background of this case, the following facts are gathered and incorporated from various sources, including the direct appellate record as well as previous opinions issued by various state and federal courts.

2. *See Ex parte Hartfield*, 442 S.W.3d 805, 806–18 (Tex. App.–Corpus Christi 2014, pet. ref'd).

3. *See, e.g.,* Deborah Hastings, *Texas inmate must stay in prison, despite conviction being*

*overturned in 1980*, N.Y. DAILY NEWS, April 18, 2014, http://www.nydailynews.com/news/national/texasinmate-conviction-overturned–1980–behind-bars-article–1.1761084 (last visited Dec. 21, 2016); Andrew Cohen, *12,000 Days Later, Texas Still Won't Release Jerry Hartfield From Custody*, THE ATLANTIC, Nov. 25, 2013, http://www.theatlantic.com/national/archive/2013/11/12–000–days-later-texas-still-wont-releasejerry-hartfield-from-custody/281395/ (last visited Dec. 21, 2016).

drawal in 2013. At the 2013 pre-retrial motion to dismiss hearing before the trial court, Scardino testified that at the time the purported commutation order issued, Scardino believed it to be invalid. Steven Reis, the district attorney of Matagorda County,[4] testified that he "inherited" Hartfield's case when he was elected district attorney in 1993. According to Reis, it was his belief at the time of reviewing the case, Hartfield's life imprisonment sentence was valid. Reis testified that his office was responsible for Hartfield's retrial and that all of the evidence used in the initial trial was available, including a signed confession from Hartfield.

From March 1983 until November 13, 2006, no action was taken on Hartfield's case from either the State or Hartfield. At the motion to dismiss hearing, the trial court took judicial notice of various court filings, some dating back to 1977.

**B. 2006–Present**

Following the 2013 motion to dismiss hearing, the trial court found that the first post–1983 action taken on Hartfield's case began on November 14, 2006, when Hartfield filed a pro-se handwritten writ of habeas corpus with the Wharton County District Clerk. In that filing, Hartfield complained that he was not properly brought before a magistrate under article 15.16 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 15.16 (West, Westlaw through 2015 R.S.). Hartfield also petitioned for writ of mandamus in the Texas Court of Criminal Appeals on December 27, 2006. In that filing, Hartfield raised a speedy trial claim, but the court of criminal appeals denied that petition on January 31, 2007 without opinion. The trial court further found that on November 27, 2007, Hartfield filed a hand-

written supplement to his previous writ requesting relief under the Sixth Amendment's Speedy Trial provision. According to the trial court's findings, there was no evidence that the supplement was presented to the presiding judge at the time.

On April 11, 2007, Hartfield filed a "Motion for Leave to File an Original Application for Writ of Habeas Corpus or Writ of Mandamus" addressed to the "Honorable Judges of the Court of Criminal Appeals" in the Wharton County trial court. In this filing, Hartfield chronicled the history of his case, asserted his right to a speedy trial, and requested that the trial court grant his relief and allow for a new trial in his case. On May 30, 2007, the court of criminal appeals denied Hartfield's application without an order. The trial court found that despite the clerk's record indicating that this April 11, 2007 filing was filed by the Wharton County District Clerk, there was "no evidence that Hartfield served the Wharton County District Attorney or any Wharton County assistant district attorney ... nor [was] there evidence these persons received or read the pleadings."

After the court of criminal appeals denied his requested relief, Hartfield proceeded to federal court. On October 22, 2007, Hartfield filed a pro se federal habeas application in the United States District Court for the Southern District of Texas, which appointed him a federal public defender. *See Hartfield v. Quarterman*, 603 F.Supp.2d 943, 946–956 (S.D. Tex. 2009). The federal district court concluded that the governor's commutation order was a "nullity" and that Hartfield was not "in custody pursuant to the judgment of a state court," but ultimately concluded that the case should be transferred to the Unit-

---

**4.** Although this case was initially tried in Wharton County, the case was transferred to Matagorda County upon agreement between the State and Hartfield.

ed States District Court for the Eastern District of Texas because Hartfield was confined in a facility within the Eastern District of Texas. *See id.* At the Eastern District of Texas, a magistrate's recommendations were adopted, and his case was dismissed for Hartfield's failure to exhaust his state-court remedies. *See Hartfield v. Director, TDCJ–CID,* No. 6:09cv98, 2011 WL 1630201, at **1–5 (E.D. Tex. 2011) (mem. op.). In its opinion, the Eastern District of Texas court stated: "it is not at all clear to this Court the effect on Hartfield's conviction under Texas criminal law by the Texas Court of Criminal Appeals' March 4, 1983, mandate for a new trial *before* the Governor's March 14, 1983, commutation." *Id.* at *5. Hartfield and the State appealed the Eastern District court's decision to the United States Court of Appeals for the Fifth Circuit.

The Fifth Circuit held that "no controlling precedent under Texas law" controlled Hartfield's case and certified the following question to the Texas Court of Criminal Appeals: "What was the status of the judgment of conviction after these events occurred?" *See Hartfield v. Thaler,* 498 Fed.Appx. 440, 444–45 (5th Cir. 2012). In response to the Fifth Circuit, the court of criminal appeals held that the governor's commutation order in this case was of "no effect" because "there was no conviction, and no sentence to reduce" at the time that the order was signed by Governor White. *See Hartfield II,* 403 S.W.3d at 239. Additionally, the court of criminal appeals noted that its prior denials of Hartfield's writs for habeas corpus were appropriate because Hartfield filed them under article 11.07 of the code of criminal procedure, *see* Tex. Code Crim. Proc. Ann. art. 11.07 (West, Westlaw through 2015 R.S.), which "relates only to postconviction applications for writ of habeas corpus." Since "there

was no judgment of conviction against [Hartfield], this was not the proper procedure," and the court denied the applications. *Hartfield II,* 403 S.W.3d at 239. The court of criminal appeals thus concluded that the Eastern District court was correct in holding that Hartfield failed to exhaust his state remedies prior to entering into federal court. *See id.* at 239–40. As a result of the court of criminal appeals' answer to the certified question, the Fifth Circuit affirmed the Eastern District court's dismissal. *See Hartfield v. Stephens,* 536 Fed. Appx. 455, 455–56 (5th Cir. 2013).

On July 3, 2013, pursuant to Hartfield's request, and with the State's consent, Hartfield's case was transferred from Wharton County to Matagorda County. Prior to the transfer, Hartfield filed petitions for writ of habeas corpus under article 11.08 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 11.08 (West, Westlaw through 2015 R.S.) (providing a defendant the opportunity to petition for habeas writ when the applicant has been charged with felony). Here, Hartfield again asserted that his right to a speedy trial was violated under the Sixth Amendment to the United States Constitution and requested that his indictment be set aside. Additionally, on December 17, 2013, Hartfield filed a motion to dismiss the State's indictment against him pursuant to article 27.03 of the code of criminal procedure. *See id.* art. 27.03 (giving a defendant the ability to move to set aside an indictment). On December 19, 2013, the trial court held a hearing on Hartfield's petitions for writ of habeas corpus and motion to dismiss the indictment. On April 10, 2014, the trial court denied Hartfield's petition for writ of habeas corpus, as well as Hartfield's motion to dismiss the indictment.[5]

5. After the trial court's ruling, Hartfield ap- pealed the trial court's denial of his pre-trial

The trial court issued thirty-eight pages of findings of fact and conclusions of law following the December 19, 2013 hearing. The relevant findings include: (1) Hartfield's retrial was set for May 12, 2014; (2) "items of evidence from the 1977 trial" are missing and "have not been tendered to Matagorda County, including the murder weapon"; (3) the "deceased victim's car was returned to the family prior to the 1977 trial and was not used as evidence in . . . that trial. That vehicle is not available to the parties on retrial"; and (4) while Hartfield's attorney alluded to some witnesses that testified in the 1977 trial now being deceased, there is no evidence in the record supporting that claim (other than such evidence produced at the trial on the merits)."

The trial court also conducted a speedy-trial analysis utilizing the four factors as set forth in *Barker v. Wingo*. 407 U.S. 514, 530–33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (holding that the four factors courts should assess in determining whether a defendant has been deprived of his right to a speedy trial are: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant). We will discuss the trial court's *Barker* analysis in more detail below, but in denying Hartfield's motion to dismiss, the trial court summarized its findings and conclusions by creating the following chart:

| *Barker v. Wingo* Factor | Finding | Weighs Against the | Degree |
|---|---|---|---|
| Length of the Delay | Over 30 years from mandate to instant motion | State | Triggers *Barker* review |
| Reason for Delay | State's negligence | State | Not as heavily as bad faith or intentional delay |
| Defendant's assertion of the right to speedy trial | Acquiescence for over 23 years; no demand for speedy trial made. | Hartfield | Heavily |
| Prejudice to the Accused | Presumed prejudice, extenuated by acquiescence | State | Slight |

On August 10, 2015, the State retried Hartfield for capital murder. After an eight-day trial, the jury found Hartfield guilty of the lesser-included offense of murder and sentenced him to life imprisonment. This appeal ensued.

## II. SPEEDY TRIAL

By his first issue, Hartfield asserts that the trial court erred by denying his motion to set aside his indictment because his constitutional right to a speedy trial was violated.

writs and sought a petition for writ of prohibition and motion for emergency stay of his retrial. *See Ex parte Hartfield*, 442 S.W.3d 805, 812 (Tex. App.–Corpus Christi 2014, pet. ref'd). We held that Hartfield's "speedy trial claim is not cognizable by a pretrial petition for a writ of habeas corpus" and overruled his appeal. *See id.* at 817. We further held that Hartfield had an adequate remedy at law to assert his speedy-trial claim by post-conviction direct appeal of the trial court's denial of his motion to dismiss. *See id.* at 814–15.

## A. Applicable Law and Standard of Review

An accused has the right to a speedy trial that is guaranteed by the United States and Texas Constitutions. *See* U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *see also Klopfer v. N. Carolina*, 386 U.S. 213, 219–26, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (holding that the Sixth Amendment right to a speedy trial is "fundamental" and applies to the states under the Fourteenth Amendment). A speedy trial protects three interests of the defendant: freedom from oppressive pretrial incarceration; mitigation of the anxiety and concern accompanying public accusation; and avoidance of impairment to the accused's defense. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

In addressing a speedy-trial claim, the United States Supreme Court has laid out four factors that a court should consider: (1) the length of the delay; (2) the State's reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant because of the length of delay. *See Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (citing *Barker*, 407 U.S. at 530, 92 S.Ct. 2182). Before engaging in an analysis of each *Barker* factor, the accused must first make a threshold showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Id.* The court of criminal appeals has defined "presumptive prejudice" as the point at which courts deem the delay unreasonable enough to trigger further enquiry." *Id.* (citing *State v. Munoz*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999)).

Our review of an application of the *Barker* test is akin to the review utilized in a ruling on a motion to suppress. *Id.* That is, we give total deference to historical findings of fact of the trial court

that the record supports and draw reasonable inferences from facts necessary to support the trial court's findings, but we review de novo whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis and the weighing of the *Barker* factors, which are legal questions. *Id.* at 809. Further, a reviewing court should not consider in its deliberations record evidence that was not before the trial court when it made its ruling. *Id.* at 809.

Finally, because dismissal of the charges is a radical remedy that is mandated only upon a finding that an accused Sixth Amendment's speedy-trial right was actually violated, "a wooden application of the *Barker* factors would infringe upon the societal interest in trying people accused of crime, rather than granting them immunization because of legal error." *Cantu*, 253 S.W.3d at 281. Thus, courts must apply the balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *Id.* The constitutional right is that of a speedy trial, not dismissal of the charges. *Id.*

## B. Discussion

### 1. Presumptive Prejudice and Length of Delay

A speedy trial analysis begins with the length of the delay. This is measured from the time the accused is arrested or formally accused. *Gonzales*, 435 S.W.3d at 809. "The length of the delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is *prima facie* unreasonable under the circumstances." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). In general, "delay approaching one year is sufficient to trigger a speedy trial inquiry." *Id.* (cit-

ing *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)).

Here, the trial court concluded that thirty years had elapsed from the time the court of criminal appeals vacated Hartfield's conviction until the time of the hearing in the present case. The trial court's affirmative finding under this factor is not challenged by either party. In fact, the State concedes in its briefing that the thirty-year delay is sufficient to trigger the speedy trial inquiry. What is in dispute, however, is the amount of weight to be given to this finding. While we agree with the State that such a finding or concession does not *automatically* amount to a speedy trial violation and instead triggers a full *Barker* analysis, the court of criminal appeals has held that a length of delay extending beyond the minimum amount of time required to trigger a full *Barker* analysis weighs heavily against the State because "the longer the delay, the more the defendant's prejudice is compounded." *See Gonzales*, 435 S.W.3d at 809 (citing *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002)).

The length of delay in this case overshoots the delays in other speedy-trial cases by decades: *Zamorano* (two years and ten months), *Gonzales* (six years), and *Doggett* (eight-and-a-half years).[6] As a result, not only does this first factor trigger a *Barker* analysis, it also in and of itself weighs heavily against the State. *See Gonzales*, 435 S.W.3d at 809; *Zamorano*, 84 S.W.3d at 649.

## 2. Reason for the State's Delay

 Next, we look to the reasons that the State has assigned to justify the delay. *See Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

In its briefing, the State admits that it was negligent in failing to recognize and appreciate Hartfield's status after the court of criminal appeals' mandate issued, but the State also attempts to shift part of the blame for the delay toward Hartfield and his lawyers for their inaction between 1983 and 2006. We disagree with this argument.

The State relies on *Vermont v. Brillon* in support of its position. 556 U.S. 81, 84–94, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009). In *Brillon*, the Vermont Supreme Court found that the three-year delay in bringing Brillon to trial for felony domestic assault was the result of the State's delays rather than any affirmative actions by Brillon's various appointed trial counsels. *See id.* at 88–89, 129 S.Ct. 1283. The United States Supreme Court disagreed and reversed the Vermont high court's decision after holding that "delay caused by the defense weighs against the defendant" and placing of blame for such delays on the State amounted to reversible error. *Id.* at 92, 129 S.Ct. 1283. It was held that Brillon's assigned public defenders' repeated delay tactics and "inability or unwillingness ... to move the case forward" should have been attributed to Brillon rather than the State because to hold otherwise would encourage the use of unnecessary and unreasonable delay tactics to seek dismissal. *Id.* at 92–93, 129 S.Ct. 1283. We agree with the trial court's conclusion that *Brillon* is distinguishable from Hartfield's case.

Here, the trial court found that Hartfield was represented by court-appointed counsel Scardino and Richard Manske from 1977 until 2013, when both attorneys were granted permission to withdraw. The trial court concluded that unlike *Brillon*, Scardino and Manske "took no action that delayed the new trial ordered by the Texas

---

6. This eight-and-a-half-years' length of delay was labeled "extraordinary" by the United States Supreme Court. *See Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

Court of Criminal Appeals or impaired the State's ability to return Hartfield to Wharton County and put him to trial during this 30[-]year period." We agree. Brillon's attorneys took affirmative actions to delay Brillon's trial. The record in this case is devoid of *any* actions taken by Scardino, Manske, or even Hartfield from 1983 until 2006. Thus, like the trial court, we attribute no blame for the delay to Hartfield, and place blame solely on the State.

■ We look now to the State's own justifications for the thirty-year delay in retrying Hartfield. When examining justifications for delay, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. For example, a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government, while more neutral reasons such as "negligence or overcrowded courts" should be weighted less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* Additionally, valid reasons such as missing witnesses should serve to justify appropriate delay. *Id.*

The trial court found the State negligent for failing to retry Hartfield, and the State likewise admits its negligence on appeal. In weighing this factor against the State, the trial court weighted it "[n]ot as heavily as bad faith or intentional delay" and "in accord with the delay's extraordinary length."

In *Doggett*, the United States Supreme Court stated that "between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground." 505 U.S. at 656–57, 112 S.Ct. 2686. Further, the *Doggett* Court recognized that "[a]lthough negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Id.* at 657, 112 S.Ct. 2686. Furthermore, tolerance of such official negligence "varies inversely with its protractedness." *Id.*

The facts in this case surrounding the State's post–1977 conviction activities cannot now be excused by writing it off as simple negligence. After the court of criminal appeals vacated Hartfield's conviction and ordered Hartfield's new trial in 1980, the State filed a motion for rehearing, affirmatively urging the court of criminal appeals " 'to affirm the finding of guilt, vacate the death sentence, and reform the judgment so as to reflect a punishment of life imprisonment,' or allow them a 'reasonable time to seek commutation of sentence from the Governor.' " *Hartfield I*, 645 S.W.2d at 442 (op. on reh'g).

The option of seeking a commutation of Hartfield's sentence from death to life imprisonment was an available remedy for the State, as illustrated by *Whan v. State*. *See* 485 S.W.2d 275, 276 (Tex. Crim. App. 1972). In *Whan*, the governor commuted Whan's punishment from death to life imprisonment while the case remained pending at the court of criminal appeals, following a reversal of its decision to affirm Whan's death penalty sentence by the United States Supreme Court. *See id.* Thus, the *Hartfield I* court recognized that the State still had an opportunity to seek a commutation of Hartfield's sentence from death to life imprisonment, despite its opinion reversing the conviction in its entirety, because the court of criminal appeals had yet to issue its mandate to make the opinion final. *See Hartfield I*, 645 S.W.2d at 442. In its opinion on rehearing denying the State's motion, the court of criminal appeals wrote:

Further, as to the State's request for a "reasonable time to seek commutation of 'sentence' from the Governor," we direct their attention to Tex. Cr. App. R. 310, which states in part:

> "When a decision of the Court of Criminal Appeals becomes final, the Clerk of the Court shall issue a mandate to the court below. A decision of the Court shall be final at the expiration of 15 days from the ruling on the final motion for rehearing or from the rendition of the decision if no motion for rehearing is filed."

We hold that the 15[-]day period between the rendition of our decision and the date that the mandate issues is a "reasonable time to seek commutation of 'sentence' from the Governor." Also see Tex. Cr. App. R. 311, which provides for a stay of mandate for not more than 60 days.

*Id.*

Thirty years later, the court of criminal appeals in *Hartfield II* interpreted the preceding language in the following manner:

> In our opinion on the State's motion for rehearing in this case, we recognized that the State had requested time to seek commutation of the sentence from the governor and we noted the State's options for seeking commutation. We said that the State could obtain the commutation in the 15-day period between our ruling on the motion for rehearing and the date mandate issued and also cited our rule regarding staying the mandate for up to 60 days. Additionally, during the same term the mandate was issued, the State could have filed a motion to withdraw the mandate. *See Deramee v. State*, 379 S.W.2d 908 (Tex. Crim. App. 1964). The State did not exercise any of these options, and our denial of the State's motion for leave to file a

second motion for rehearing did not, as the State argues, re-start the clock on the 15–day window. We issued our mandate and the judgment was final 15 days after our ruling on the motion for rehearing. As soon as mandate issued, [Hartfield's] conviction and sentence were vacated, our order for a new trial became final, and the case was returned to the point it would have been had there never been a trial.

*Hartfield II*, 403 S.W.3d at 239 (footnotes omitted).

We agree with the trial court's conclusion that the court of criminal appeals' admonishments in *Hartfield I*—as confirmed by the court in *Hartfield II*—relayed critical timing considerations to the State regarding when the commutation order should have been obtained prior to the issuance of court of criminal appeals' mandate. The record shows that the court of criminal appeals issued its mandate on March 4, 1983, and eleven days after the mandate issued, the governor signed an order commuting Hartfield's sentence from death to life imprisonment. In other words, the court of criminal appeals put the State on notice regarding what the State needed to do to achieve its alternative punishment goals and in how much time those goals needed to be accomplished. Despite this knowledge, the State took no further action on Hartfield's case until 2007.

In its briefing before the trial court opposing Hartfield's motion to dismiss, the State averred that the record

> strongly suggests that the State was unaware of the defective commutation. Indeed, virtually all of the instrumentalities of the criminal justice system acted in concert to ensure that [Hartfield] served his life sentence pursuant to state law.

In its ruling, the trial court held that "the record is in fact silent on this point" and cites to District Attorney Reis's testimony that the State was "operating on the assumption" that the commutation order was valid until Hartfield began filing pro se writ applications. The trial court discounted Reis's testimony and found that his testimony was "conclusory and provides no evidence regarding what efforts were made to consider the commutation's validity."

Based on these facts in the record, as well as giving due deference to the trial court's findings of fact, we agree with the trial court's conclusion that the State acted negligently in failing to retry Hartfield for thirty years following the court of criminal appeals' opinion on rehearing in 1983. However, we disagree with the State's legally untenable position that it was unaware of the invalid commutation in order to justify its delay. The record unequivocally shows that the State consciously developed an alternative plan to avoid retrying Hartfield after *Hartfield I* and apprised the court of criminal appeals of its intentions. In response—and in clear and unambiguous language—the court of criminal appeals laid out a procedure and timetable for the State to properly effect its plan, including the time sensitivity of obtaining the governor's commutation order balanced with the court of criminal appeals' mandate procedures. The State did not meet these deadlines, despite having actual knowledge of them, including the possible repercussions of not meeting them, and the court of criminal appeals' mandate issued before the commutation order was signed. As we have stated, tolerance of such official negligence "varies inversely with its protractedness." *Doggett*, 505 U.S. at 657, 112 S.Ct. 2686. The State's negligence in this case created a criminal justice nightmare for Hartfield and the system at-large, as he sat in the custody of the Texas Department of Criminal Justice for thirty-two years without a conviction. We weigh the second *Barker* factor heavily against the State. *See Barker*, 407 U.S. at 531, 92 S.Ct. 2182

### 3. Timing of Hartfield's Assertion of His Right to a Speedy Trial

 The third factor of whether and how a defendant asserts his right is closely related to the other factors. *Id.* The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that a defendant experienced. *Id.* The more serious the deprivation, the more likely a defendant is to complain. *Id.* As a result, the defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether he is being deprived of the right. *Id.* Further, a defendant who fails to demand a speedy trial does not forever waive the right. *Id.* at 528, 92 S.Ct. 2182. However, the defendant nevertheless has a responsibility to assert his right, and his actions in this regard factor in with the remainder of the *Barker* factors. *See id.*

 The record shows that Hartfield and his attorneys were silent in this case for from 1983 until 2006. In 2006, Hartfield acted pro se and filed an application for writ of habeas corpus under article 11.07 of the code of criminal procedure seeking non-speedy-trial-related relief from his 1977 conviction. *See* TEX. CODE CRIM. PROC. art. 11.07. An application for habeas relief may only be brought under article 11.07 after a defendant has been convicted of a non-death-penalty felony. *See id.* Because Hartfield did not have a final felony conviction after 1983, Hartfield's application under article 11.07 was improper. *See id.*

Two weeks later, Hartfield filed a "Mandatory Judicial Notice" wherein he raised a speedy trial claim. The trial court found, however, that there was no evidence to show that "the Wharton County District Clerk forwarded the Mandatory Judicial Notice to the judge presiding." Hartfield subsequently filed a pro se petition for writ of mandamus to compel a new trial in the court of criminal appeals, which was denied. *See Hartfield II*, 403 S.W.3d at 236. In 2007, Hartfield a second application for writ of habeas in the court of criminal appeals, which also denied pursuant to article 11.07, section 4 of the code of criminal procedure. *See id.* at 236; *see also* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (proscribing a court from considering the merits of a subsequent application for writ of habeas corpus filed after the final disposition of an initial application challenging the same conviction). After this denial, Hartfield then sought relief in the federal courts in October of 2007 and was appointed a public defender.

The record shows that on November 13, 2007, the Texas Attorney General's Office sent written correspondence to the Wharton County District Clerk's Office asking for assistance in responding to Hartfield's complaints in federal court. The attorney general's office's letter specifically requested:

(1) [W]hether there was any docket entry ... in the trial court after the Court of Criminal Appeals mandate issued on March 1, 1983?;

(2) Can you tell me if [Hartfield] has ever filed (after 6/30/1977) a state habeas application not under 11.07 (postconviction) but under another provision such as 11.08 (applicant charged with felony), if so, can you please provide us with any and all records pertaining to such action.

(3) Can we have any other motions filed in the trial court or court of appeals regarding his case after March 1, 1983?

A handwritten note on the attorney general's letter signed by the deputy district clerk states simply: "Nothing requested found." Hartfield then began his six-year journey through the federal courts that eventually sent him back to state court and now before us in this appeal.

■ To be sure, the duty to bring a defendant to trial belongs solely to the State. *See Cantu*, 253 S.W.3d at 282. However, a defendant also has the responsibility to assert his right to a speedy trial. *See id.* It is undisputed that Hartfield and his court-appointed lawyers did not assert his right to a speedy trial for twenty-three years. Furthermore, although Hartfield's court-appointed lawyer Scardino testified that he believed the commutation order was invalid, and for reasons not apparent in the record [7], nothing was done to assert Hartfield's speedy trial right for twenty-three years.[8] We recognize that a defendant's failure to complain is entitled to "strong evidentiary weight in determining whether the defendant is being deprived of the right." *See Barker*, 407 U.S. at 531, 92

---

7. In a cross-appeal point, the State argues that we should address whether the trial court erred when it did not consider Hartfield's original trial counsel's affidavit to determine the reasoning for not seeking a new trial following the court of criminal appeals' 1983 decision. We deny the State's invitation because our speedy-trial analysis considers only record evidence that was before the trial court when it made its ruling, and we will not second-guess such evidentiary rulings under these circumstances. *See Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. 2014). We overrule the State's cross-appeal point.

8. We note that Hartfield has not raised an ineffective assistance of counsel claim in this appeal.

S.Ct. 2182. As a result, we weigh this twenty-three-year gap of inactivity against Hartfield.

On the other hand, we cannot ignore Hartfield's repeated assertions of his right to a speedy trial from 2006 to 2013 in state and federal court proceedings. Because Hartfield believed his relief was exhausted in state court, as evidenced by the court of criminal appeals' denials of his writs in 2007, he entered federal court. Although this conclusion was ultimately incorrect, his status in the criminal justice system was confirmed: he was without a conviction. Additionally, we disagree with the trial court's conclusion that "notices, motions and pleadings to the attorney general, to state appellate courts, to federal courts and to former judges of courts in adjacent counties are not an assertion of the right to a speedy trial that would support *Barker* relief." Beginning in at least late 2007, Hartfield made the State aware of his complaints and the State did nothing on Hartfield's case until the proceeding returned to state court. We have also concluded that the State's highly negligent reasons for the delay are weighed against it and to conclude that the State should be excused, despite having some notice, under the trial court's logic would condone prolonged and unjustifiable delays in prosecution. *See Doggett*, 505 U.S. at 657, 112 S.Ct. 2686.

Therefore, like the trial court, we weigh this factor against Hartfield due to the twenty-three-year inactivity in his case, but not as heavily, because of Hartfield's state and federal court efforts to his assert his right to a speedy trial beginning in 2006.

### 4. Prejudice Because of the Length of Delay

 The fourth and final *Barker* factor encompasses the three interests involved in the right to a speedy trial: preventing oppressive pretrial incarceration; minimize anxiety and concern of the accused; and limiting the possibility that the defense will be impaired. *See Gonzales*, 435 S.W.3d at 812 (citing *Barker*, 407 U.S. at 532, 92 S.Ct. 2182). "The last interest is the most important because the fairness of the entire criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id.*

With regard to the first two interests, it is undisputed that Hartfield sat in prison for thirty-two years without a conviction or sentence. Therefore, preventing oppressive pretrial incarceration and minimizing anxiety and concern, were clearly not met in this case. The third interest, however, is not as clear cut. "Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686. But this presumption of prejudice to the defendant's ability to defend himself is extenuated by the defendant's acquiescence in the delay. *Shaw*, 117 S.W.3d at 890.

Here, despite being incarcerated for twenty-three years, Hartfield appeared to acquiesce to the delay of his retrial. This fact, however, does not hide the astronomical amount of time he spent in prison without a conviction or sentence. Furthermore, Hartfield chose to no longer acquiesce to his incarceration in 2006, when he began pro se to assert his right to a speedy trial. Accordingly, based on this record, we agree with the trial court that this factor weighs against the State, but is extenuated by Hartfield's twenty-three year delay to assert his right.

### 5. Balancing the Barker Factors

Having addressed the four *Barker* factors, we must now balance them. Weighing in favor of finding a violation of Hartfield's right to a speedy trial are: the excessive

delay (factor one); the State's high-level of negligence in justifying the delay (factor two); and the prejudice to Hartfield's case (factor four). Weighing slightly against finding a violation of Hartfield's right to a speedy trial is Hartfield's delayed assertion of his right to a speedy trial (factor three). After applying de novo the *Barker* factors by considering the unique facts and procedural posture of this case and the record before us, we disagree with the trial court that Hartfield's right to a speedy trial was not violated. Instead, our balancing weighs against the State, due to the unprecedented amount of time Hartfield spent in prison without a conviction or sentence, as well as the serious negligence on the part of the State.

Lastly, our decision today was not made in haste, in a mechanical fashion, or undertaken without anything but the most serious considerations of all of the parties and interests involved in these types of cases. We are deeply mindful that our conclusion today means that a defendant who may be guilty of murder may go free. However, based on the United States Constitution, it is the only possible remedy. *See Barker*, 407 U.S. at 522, 92 S.Ct. 2182. We sustain Hartfield's first issue.[9]

### III. CONCLUSION

We reverse the trial court's denial of Hartfield's motion to dismiss the State's indictment and render an order dismissing the State's indictment against Hartfield with prejudice.

---

9. Hartfield's remaining issues include whether the trial court erred in: (1) instructing the jurors at retrial regarding Hartfield's eligibility for parole; (2) admitting Hartfield's confessions at trial; and (3) finding the taint from the arrest warrant was attenuated. Because our disposition today gives Hartfield the greater relief over the remedies requested in the remaining three issues, we need not address these issues on appeal. *See* TEX. R. APP. P. 47.1.