Melissa Goodwin, Justice, concurring.
It is well settled that the right to a speedy trial attaches when a person becomes an accused, which is when he is arrested or formally charged. Henson v. State , 407 S.W.3d 764, 767 (Tex. Crim. App. 2013) ; Cantu v. State , 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) ; Emery v. State , 881 S.W.2d 702, 708 (Tex. Crim. App. 1994) ; Harris v. State , 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) ; see United States v. Marion , 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment."). It is not clear, however, how this well-settled law applies to *711 calculating the length of delay in the context of a retrial after a defendant's conviction has been overturned.
Professors Dix and Schmolesky have concluded that "all the time that passed [since the attachment of the right] must be considered" in calculating the length of delay.[1] See 42 George Dix & John Schmolesky, Texas Practice Series: Criminal Practice and Procedure § 28:10 (3d ed. 2011). The professors derive this premise from Emery v. State , a case in which the Court of Criminal Appeals calculated the length of delay from the date of indictment until the date of retrial. See Emery , 881 S.W.2d at 708. However, in its opinion the Court provided no discussion about how to calculate the length of delay in the retrial context, and offered no reasoning or explanation as to why that time period-which included the time before the first trial and conviction as well as the time of the appellate and post-conviction proceedings-should be used to calculate the length of delay in the context of a retrial. See ids="10010715" index="138" url="https://cite.case.law/sw2d/881/702/#p707">id. Moreover, two years later in Knox v. State , the Court of Criminal Appeals, again addressing a speedy trial claim in the retrial context, calculated the length of delay using only the period of time from the Fifth Circuit's ruling reversing the lower court's denial of Knox's federal habeas corpus application to the district court's subsequent order requiring the State to begin retrial within 90 days.[2] See Knox v. State , 934 S.W.2d 678, 681 (Tex. Crim. App. 1996). This calculation did not include any time prior to Knox's conviction, the three-year period of the direct appeal, or the subsequent three years of post-conviction state and federal habeas corpus proceedings. See ids="10021905" index="140" url="https://cite.case.law/sw2d/934/678/#p681">id.
In the instant case, the majority separates out the period of delay into three separate time periods: from indictment until Davis's first trial, from conviction until the issuance of mandate by this Court, and from the issuance of mandate until the trial court granted Davis's motion to dismiss on speedy trial grounds. I am not certain, however, that, when considering the right at issue, the law clearly establishes that all the time from those three separate periods should be included in the calculation of the length of delay. The delay should be calculated only for the time periods during which the speedy trial clock was ticking. For purposes of the speedy trial right at issue here-Davis's right to a speedy retrial-I question whether the clock was ticking for two of those three periods.
The first time period, from indictment until Davis's first trial, does not seem relevant to his present right to a speedy retrial. As Professors Dix and Schmolesky have observed, "The constitutional rights to speedy trial are phrased in terms of a *712 right to a 'speedy ... trial. ' Perhaps quite obviously, this makes clear that once trial has been held, the right has been afforded the accused. " See 42 George Dix & John Schmolesky, Texas Practice Series: Criminal Practice and Procedure § 28:54 (3d ed. 2011) (emphasis added). While I acknowledge that the Court of Criminal Appeals has at times included the time period from indictment until the first trial in the calculation of the length of delay in the retrial context, see Emery , 881 S.W.2d at 708 (calculating length of delay from date of indictment until retrial); see also Shaw v. State , 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (calculating length of delay from date of indictment until second trial), I am unclear about the basis for doing so. No reasoning or explanation for doing so has been provided in these opinions,[3] and other decisions by the Court of Criminal Appeals have excluded that time. See Knox , 934 S.W.2d at 681 (addressing delay from date of Fifth Circuit reversal of lower court's denial of federal habeas relief);[4] Soffar v. State , No. AP-75, 2009 WL 3839012, at *38-39 (Tex. Crim. App. Nov. 18, 2009) (not designated for publication) (rejecting appellant's calculation of 25-year delay that elapsed between first trial (at which he received ineffective assistance of counsel) and retrial, and calculating delay from when trial court judgment was reversed because "decision to exclude the time before the [order reversing judgment] in our length of delay analysis is consistent with Supreme Court precedent and decisions from other state appellate courts"). In my opinion, the right to a speedy trial that Davis had during that first time period was satisfied by his first trial. The present speedy trial right at issue is Davis's right to a speedy retrial. Thus, I do not think the first time period should be included in the calculation of the length of delay in Davis's right to a speedy retrial.
Similarly, the second time period, from conviction until the issuance of mandate by this Court, should not be included in the calculation. Citing to Emery , Dix and Schmolesky express that "clearly delay caused by appeal and reversal for a new trial must be considered in calculating whether the delay before the subsequent trial violates the Sixth Amendment right." However, in Emery , while the Court of Criminal Appeals included the four and a half years the appeal was pending in its calculation of the delay, the Court did not explicitly hold that such time must be, or explain why it should be, included in the calculation. See Emery , 881 S.W.2d at 708. Nor did it do so in Shaw. See Shaw , 117 S.W.3d at 889. Moreover, in addition to excluding such time in its calculation in *713 Knox v. State , see Knox , 934 S.W.2d at 681, more recently, in Soffar v. State , an unpublished opinion, the Court of Criminal Appeals explicitly agreed with the State's contention that the time Soffar prosecuted his appeal and sought state and federal habeas relief should not be included in the speedy trial analysis. See Soffar , 2009 WL 3839012, at *39. The Court observed that by incorporating the time period of appeal and post-conviction proceedings, "Soffar's claim amount[ed] to an assertion that he should have been prosecuted while incarcerated pursuant to a presumptively valid conviction," and concluded that "[t]his is illogical; any effort to retry Soffar while his appeal and post-conviction proceedings were underway would have run afoul of the Double Jeopardy Clause." Id. I agree with this assessment and reasoning. The second time period, from Davis's conviction until the issuance of mandate by this Court, should not be included in the calculation of the length of delay of Davis's right to a speedy retrial because during that time period Davis had no right to a speedy trial as he could not be subjected to trial at that point. See itation index="150" url="https://cite.case.law/citations/?q=2009%20WL%203839012">id. Davis's first trial had yet to be overturned, and his right to a speedy trial on retrial had not yet attached. See itation index="151" url="https://cite.case.law/citations/?q=2009%20WL%203839012">id. (concluding that "the speedy-trial clock began to run, at the earliest, on the date that Soffar's conviction and sentence were reversed"); see, e.g. , Hartfield v. State , 516 S.W.3d 57, 65 (Tex. App.-Corpus Christi 2017, pet. ref'd) (calculating length of delay from the time Court of Criminal Appeals vacated conviction until hearing on motion to dismiss for violation of right to speedy trial); Clarke v. State , 928 S.W.2d 709, 713-14 (Tex. App.-Fort Worth 1996, pet. ref'd) (calculating length of delay from denial of petition for certiorari until retrial); see also Hartfield v. Thaler , 403 S.W.3d 234, 239 (Tex. Crim. App. 2013) ("As soon as mandate issued, Petitioner's conviction and sentence were vacated, our order for a new trial became final, and the case was returned to the point it would have been had there never been a trial.").
That leaves only the third time period, from the issuance of mandate by this Court until the trial court granted Davis's motion to dismiss, which constitutes an 18-month delay. This period of delay remains sufficient to trigger the analysis of the remaining Barker factors. Consideration of those factors relative to the 18-month delay-in contrast to a six-year delay-alters the analysis dramatically.
For example, "the extent to which the delay exceeded the minimum needed to trigger judicial examination" factors into the assessment of the first factor, the length of delay. See Balderas v. State , 517 S.W.3d 756, 768 (Tex. Crim. App. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 1207, 197 L.Ed.2d 251 (2017). Using the 18-month calculation as the length of delay, the excess beyond the minimum (a delay approaching one year) is six months rather than five years. Thus, one cannot conclude that the delay "stretched far beyond the minimum needed to trigger the [ Barker ] inquiry" and, therefore, weighs "heavily" in favor of finding a violation of Davis's speedy trial right. Contra Balderas , 517 S.W.3d at 768 ; see, e.g. , Shaw , 117 S.W.3d at 889 (three-year delay "stretched far beyond the minimum needed to trigger the inquiry;" factor weighed heavily in favor of finding violation of right to speedy trial); Dragoo v. State , 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) (three-and-a-half year delay "stretched far beyond the minimum needed to trigger the enquiry;" factor weighed heavily in favor of finding violation of speedy trial right); Zamorano v. State , 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (four-year delay "stretched well beyond the bare minimum needed to trigger *714 judicial examination of the claim;" factor weighed heavily against State).
As for the second factor, the reason for the delay was to accommodate Davis's July 2014 request for "Expedited DNA Testing" and to secure additional DNA testing at an independent laboratory as ordered by the trial court as late as April of 2015. The record reflects that the DNA results were completed in May 2015. This factor weighs against Davis.
In regard to the third factor, as the majority observes, the record contains conflicting representations by Davis-asserting his right to speedy trial while simultaneously insisting on DNA testing of the evidence. Moreover, in each of his assertions of his right to a speedy trial, Davis requested dismissal, not a trial, see Cantu , 253 S.W.3d at 283 ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."), save the hearing in December 2014 at which he ultimately agreed to pass the setting to secure DNA testing. This factor weighs against Davis.
Finally, as to the prejudice factor, Davis's claims of prejudice fall into two broad categories: loss or impairment of evidence and anxiety/health/financial issues. As for the loss or impairment of evidence, Davis complains about the death of witness Don Chelli in 2013, the death of another witness in 2009, the dimming of the memories of several witnesses (including some who testified at his first trial), and the loss of records from various sources. These complaints all refer to events that preceded the issuance of the mandate reversing his murder conviction and, in many instances, precede the original trial. Thus, the prejudice asserted in this category of complaints is not attributable to the 18-month delay of his retrial. As for Davis's other category of complaints, the interest the speedy trial right is intended to protect in this regard is to minimize the anxiety and concern accompanying a public accusation. Henson , 407 S.W.3d at 766 (citing Barker v. Wingo , 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ). The claims in Davis's affidavits fail to demonstrate that he suffered anxiety or concern beyond the level normally associated with being charged with a serious felony crime. See Cantu , 253 S.W.3d at 286 ("[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the Barker test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation.") (citing Shaw , 117 S.W.3d at 890 ). Further, nothing in Davis's affidavits establishes that his health issues or financial difficulties arose post-mandate, or were caused by the 18-month delay in his retrial as opposed to the stress and circumstances normally associated with being a defendant in a criminal prosecution. Thus, the record fails to support a conclusion that the prejudice asserted in this category of complaints is attributable to the delay of his retrial.
One must remember that this is a cold case. The murder was committed in 1985, more than three decades ago. The passage of time adversely affects the trial of a case-for both the prosecution and the defense. See Marion , 404 U.S. at 321-22, 92 S.Ct. 455 ("Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment [right to speedy trial] from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case."). It is the statute of limitations that addresses *715 the passage of time that might render a prosecution stale, not the speedy trial right. See ids="6172901" index="171" url="https://cite.case.law/us/404/307/#p320">id. at 322, 92 S.Ct. 455 (" '[T]he applicable statute of limitations ... is ... the primary guarantee against bringing overly stale criminal charges.' Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice[.]") (quoting United States v. Ewell , 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966) ).[5] Further, in asserting a speedy trial claim, it is the defendant's burden to show prejudice resulting from the delay in trial. See Balderas , 517 S.W.3d at 772 ; Cantu , 253 S.W.3d at 280. Here, Davis has not demonstrated prejudice beyond his status as a criminal defendant and the passage of time resulting from the fact that this is a cold case. He has failed to show that the prejudice that he asserts is attributable to the 18-month delay in his retrial.
In sum, considering the Barker factors in connection to the relevant period of delay-the time period after the issuance of mandate by this Court, when Davis's right to a speedy retrial attached and the clock for a speedy retrial began-none of the factors weigh in favor of finding a speedy trial violation. Ultimately, while excluding the first two time periods from the calculation of the length of delay impacts the Barker analysis, the outcome when balancing the Barker factors in this case does not change. Accordingly, under the facts of this case, I agree with the conclusion that Davis's right to a speedy retrial was not violated and with the decision to reverse the trial court's order granting Davis's motion to dismiss.
With these comments, I concur in the Court's judgment.

Of course, as the professors note, in situations where the defendant was arrested or charged but the charges were dropped, the time period between the dropping of the charges and the subsequent arrest or filing of new charges is excluded from calculation. See 42 George Dix & John Schmolesky, Texas Practice Series: Criminal Practice and Procedure § 28:10 (3d ed. 2011) (citing United States v. MacDonald , 456 U.S. 1, 8-9, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) ); see also Deeb v. State , 815 S.W.2d 692, 705 (Tex. Crim. App. 1991) ("[T]he time between a good faith dismissal of criminal charges and filing of new charges is not to be considered on speedy trial right.").

In calculating the length of delay, the Court rejected Knox's calculation of a 403-day delay between the Fifth Circuit mandate granting habeas relief unless a retrial was conducted and the trial date originally ordered by the federal district court because Knox had the district court's order stayed, thereby preventing the State from going forward with the trial. Knox v. State , 934 S.W.2d 678, 680 (Tex. Crim. App. 1996).

Without discussion about how to calculate the delay, the Emery Court summarily stated: "Approximately eight and one half years passed between appellant's initial indictment on April 28, 1983, and appellant's second trial. We hold, and the State concedes, that this time period is of sufficient length that the other factors set forth in Barker v. Wingo must be considered." Emery v. State , 881 S.W.2d 702, 708 (Tex. Crim. App. 1994). Likewise, in Shaw the Court stated: "Here, appellant was indicted in December 1997 and tried (the second time) in February 2001, an interval of 38 months. This delay was sufficient to trigger a speedy trial inquiry." Shaw v. State , 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

The Fifth Circuit reversed Knox's case due to error in the punishment phase of trial. The law applicable at that time, however, did not permit the conducting of a new "penalty determination" alone. Knox , 934 S.W.2d at 680 n.4. Remand for punishment only in a capital case was not authorized until 1991, six years after Knox's conviction. See ids="10021905" index="186" url="https://cite.case.law/sw2d/934/678/#p681">id. (citing Act of May 17,1991, 72d Leg., R.S., ch. 838, § 2, 1991 Tex. Gen. Laws 2898, 2900; Tex. Code Crim. Proc. art 44.29 ). Thus, the Fifth Circuit's ruling constituted a reversal of the entirety of the trial court's judgment.

The Texas legislature has determined that for the offense of murder such interests do not require a time limit for prosecution. See Tex. Code Crim. Proc. art. 12.01(1)(A) (establishing "no limitation" for presentation of an indictment for murder). In such circumstances, if the State can satisfy its burden of proving the offense beyond a reasonable doubt notwithstanding the passage of time, a person can be held accountable for the intentional or knowing taking of a life at any time.